UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Docket No.-_____

| | | |
|---|---|---|
| WILLIAM STOVALL, | : | Civil Action |
| Petitioner; | : | On Petition For A Writ of Habeas Corpus By A Prisoner In |
| - VS. - | : | State Custody. |
| JAMES SLAUGHTER, ET. AL., | : | Petition Pursuant To: |
| Respondents. | : | 28 U.S.C. 2254. |

**BRIEF AND APPENDIX ON BEHALF OF PETITIONER**

William Stovall # 66145
Lock Bag R
East Jersey State Prison
Rahway, New Jersey 07065
Petitioner, Pro Se

**PRESENTLY CONFINED**

# Table of Contents

Page

STATEMENT OF PROCEDURAL HISTORY..............................1

STATEMENT OF FACTS:

a.  Trial Testimony:

   (1)  The Prosecution.......................................8

   (2)  The Defense..........................................15

b.  The Court's Charge and Verdict...........................17

c.  Receipt of Melendez Report..............................19

d.  Post-Conviction Hearing, Motion To Correct Illegal
    Sentence................................................20

LEGAL ARGUMENT:

INTRODUCTION AND STATEMENT OF JURISDICTION...................21

GROUND ONE

ADMISSION OF UNSTIPULATED POLYGRAPH EVIDENCE VIOLATED
PETITIONER'S SIXTH AMENDMENT RIGHT TO FAIR TRIAL AND EFFECTIVE
ASSISTANCE OF TRIAL COUNSEL, AND FOURTEENTH AMENDMENT DUE
PROCESS WHEN TRIAL COUNSEL PERMITTED THIS TO COME BEFORE THE
JURY WITHOUT EITHER A REQUEST FOR MISTRIAL OR CURATIVE
INSTRUCTIONS................................................24

GROUND TWO

ADMISSION OF POLYGRAPH EVIDENCE VIOLATED PETITIONER'S SIXTH
AMENDMENT RIGHT TO FAIR TRIAL AND EFFECTIVE ASSISTANCE OF
APPELLATE COUNSEL, AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS
WHEN APPELLATE COUNSEL PERMITTED THIS EVIDENCE BEFORE THE JURY
WITHOUT EITHER A REQUEST FOR MISTRIAL OR CURATIVE INSTRUCTIONS
AT TRIAL, NOT BE CHALLENGED ON AN APPEAL AS OF
RIGHT.......................................................36

- ii -

Table of Contents (Continued)

Page

GROUND THREE

ALTERNATIVELY, THE SENTENCE PETITIONER IS CONFINED PURSUANT TO
VIOLATES DOUBLE JEOPARDY AND DUE PROCESS CONTRARY TO THE FIFTH
AND FOURTEENTH AMENDMENTS.

   a.  The Motion Was Timely Filed, and The State
Court Denied Due Process By Failing To Rule On
The Merits Of It...........................................38

   b.  Merger of Count Four Into Count Two Should
Have Been Had Since The Court Failed To Instruct
To Not Rely On The Evidence Presented To Prove
Count Two As Proof Of Count Four..........................42

   c.  It Was illegal For The Court To Sentence On The
Second Degree Charges When The Jury Disregarded The
Court's Instruction To Not Find Petitioner Guilty Of
Both Second and Third Degree Offenses Of the Same Crime.

     (1)  Ambiguity In Verdicts...............................52

     (2)  The Rule of Lenity.................................55

CONCLUSION....................................................59

**Index To References:**

1T   refers to stenographic transcript of February 19, 1993.
2T   refers to stenographic transcript of March 12, 1993.
3T   refers to stenographic transcript of April 4, 1994.
4T   refers to stenographic transcript of April 5, 1994.
5T   refers to stenographic transcript of April 6, 1994.
6T   refers to stenographic transcript of April 18, 1994.
7T   refers to stenographic transcript of April 19, 1994.
8T   refers to stenographic transcript of April 20, 1994.
9T   refers to stenographic transcript of April 21, 1994.
10T  refers to stenographic transcript of April 24, 1994.
11T  refers to stenographic transcript of April 27, 1994.
12T  refers to stenographic transcript of April 28, 1994.
13T  refers to stenographic transcript of April 29, 1994.

- iii -

Table of Contents (Continued)

Index To References (Continued):

14T refers to stenographic transcript of June 17, 1994.
15T refers to stenographic transcript of September 14, 2012.

Db 1 to 58 refers to defendant's brief submitted with the
Superior Court of New Jersey Appellate Division on denial of his
motion to correct an illegal sentence of May 14, 2018.

Da 1 to 163 refers to defendant's separate appendix to that
brief.

Drb 1 to 20 refers to defendant's reply brief submitted with the
Superior Court of New Jersey Appellate Division, on appeal of
the denial of his motion to correct an illegal sentence of
November 8, 2018.

Pet. para. 1 to 18 refers to petitioner's federal habeas corpus
petition.

Pa 1 to 2 refers to petitioner's appendix attached to this
brief.

**Attachments To Petition:**

Attachment 1.1 to 1.14 refers to Opinion of the Superior Court
                        of New Jersey, Law Division, On Petition
                        For Post-Conviction Relief.

Attachment 2.1 to 2.10 refers to Opinion of the Superior Court
                        Of New Jersey, Appellate Division, On
                        Petition For Post-Conviction Relief.

Attachment 3.1 to 3.4 refers to the Opinion of the Superior
                       Court of New Jersey, Law Division, On
                       Motion To Correct An Illegal Sentence.

Attachment 4.1 to 4.14 refers to the Opinion of The Superior
                        Court of New Jersey, Appellate Division,
                        On Motion To Correct An Illegal
                        Sentence.

## Table of Authorities

Page(s)

### Cases Cited

ALBRECHT V. UNITED STATES,
273 U.S. 1 (1927).....................................44

BLAKELY V. WASHINGTON,
159 L.Ed.2d 403 (2005)...............................48

BLOCKBURGER V. UNITED STATES,
248 U.S. 299 (1932)...............................38,39,43

BRADY V. MARYLAND,
373 U.S. 83 (1963)...................................22

CHAPMAN V. CALIFORNIA,
386 U.S. 18 (1967)...................................35

COLLINS V. KENTUCKY,
234 U.S. 634 (1913)..................................49

CRANE V. KENTUCKY,
476 U.S. 683 (1986)...............................22,30

DOUGLAS V. CALIFORNIA,
372 U.S. 353 (1963)..................................32

EVITTS V. LUCEY,
469 U.S. 387 (1985)..................................32

GRADY V. CORBIN,
109 L.Ed.2d 548 (1990)...............................39

HARRIS V. OKLAHOMA,
433 U.S. 682 (1977)..................................39

ILLINOIS V. VITALE,
447 U.S. 410 (1980)...............................39,40,45

J.B. V. NEW JERSEY STATE PAROLE BOARD,
229 N.J. 21 (2017)...................................29

Table of Authorities (Continued)

Cases Cited (Continued)

Page(s)

LOCKHART V. UNITED STATES,
194 L.Ed.2d 48 (2016)...............................49

NAPLES V. UNITED STATES,
344 F.2d 508 (D.C. Cir. 1964).......................48

NORTH CAROLINA V. PEARCE,
395 U.S. 711 (1969).................................40

RAGUSA V. LAU,
119 N.J. 276 (1990).................................36

REWIS V. UNITED STATES,
401 U.S. 808 (1971).................................48

ROCK V. ARKANSAS,
97 L.Ed.2d 37 (1987)...........................22,23,30

RUTLEDGE V. UNITED STATES,
517 U.S. 292 (1996).................................38

SIMPSON V. UNITED STATES,
435 U.S. 6 (1979)...................................39

STATE V. ACEVEDO,
205 N.J. 40 (2011)..................................37

STATE V. A.O.,
198 N.J. 69 (2009)..................................29

STATE V. ARNWINE,
67 N.J. Super. 483 (App. Div. 1961).................24

STATE V. BEST,
70 N.J. 56 (1976).............................38,40,42,43
                                                44,45

STATE V. BROWN,
138 N.J. 481 (1994).................................39

- vi -

Table of Authorities (Continued)

Cases Cited (Continued)

Page(s)

STATE V. CAPONE,
215 N.J. Super. 497 (App. Div. 1987)..................27

STATE V. CLARK,
128 N.J. Super. 120 (1974)...........................26

STATE V. CORBY,
28 N.J. 106 (1958)..................................35

STATE V. DAVIS,
68 N.J. 69 (1975)...................................44

STATE V. DILLIHAY,
127 N.J. 42 (1992)................................38,44

STATE V. DOMICZ,
188 N.J. 285 (2006)...........................27,28,29

STATE V. EMERY,
27 N.J. 348 (1961)..................................26

STATE V. E.W.,
413 N.J. Super. 70 (App. Div. 2010)..................37

STATE V. HOLLANDER,
201 N.J. Super. 453 (App. Div. 1985).................27

STATE V. MACON,
57 N.J. 325 (1971)..................................35

STATE V. MC DAVITT,
62 N.J. 36 (1972)................................26,29

STATE V. MERVILUS,
418 N.J. Super. 138 (App. Div. 2011).................29

STATE V. PALADINO,
203 N.J. Super. 537 (App. Div. 1985).................37

Table of Authorities (Continued)

Cases Cited (Continued)

Page(s)

STATE V. ROMERO,
191 N.J. 59 (2007).....................................37

STATE V. STOVALL,
149 N.J. 35 (1997)..................................3,39

STATE V. STOVALL,
227 N.J. 21 (2016)....................................5

STATE V. STOVALL,
___ N.J. ___ (2019)...................................6

STRICKLAND V. WASHINGTON,
466 U.S. 668 (1984)................................22,30

TATEO V. UNITED STATES,
377 U.S. 463 (1964)...................................48

UNITED STATES V. GONZALEZ,
905 F.3d 165 (3rd Cir. 2018).......................22,23

UNITED STATES V. SCHEFFER,
523 U.S. 306 (1998)................................22,23

UNITED STATES V. TUCKER,
404 U.S. 443 (1972)................................48,51

UNITED STATES EX. REL. FLOWERS V. ILLINOIS
DEPARTMENT OF CORRECTIONS,
767 F.Supp. 880 (N.D. Il. 1994)......................48

VOISINE V. UNITED STATES,
195 L.Ed.2d 736 (2016).............................49,51

YATES V. UNITED STATES,
191 L.Ed.2d 64 (2015)................................48

WHALEN V. UNITED STATES,
445 U.S. 684 (1980)...................................38

Table of Authorities (Continued)

Page(s)

## Statutes Cited

N.J.S. 2C:1-8a........................................38

N.J.S. 2C:5-1.........................................1

N.J.S. 2C:5-2.........................................1

N.J.S. 2C:29-5a.......................................1

N.J.S. 2C:29-6a(2)....................................1

N.J.S. 2C:39-3a.......................................1

N.J.S. 2C:39-3c.......................................1

N.J.S. 2C:39-3f(2)....................................1

N.J.S. 2C:39-4a.......................................1

N.J.S. 2C:39-4c.......................................1

N.J.S. 2C:39-5b.......................................1

N.J.S. 2C:39-5f.......................................1

N.J.S. 2C:43-6g.......................................3

N.J.S. 2C:43-6g.......................................3

28 U.S.C. 2244(d)(1)(A)..............................18

## Rules Cited

M.R. Evid. 707.......................................23

N.J. Ct. R. 1:1-2....................................36

N.J. Ct. R. 2:3-2....................................32

N.J. Ct. R. 2:10-2...................................35

<u>Table of Authorities Cited</u> (Continued)          <u>Page(s)</u>

<u>N.J. Ct. R.</u> 3:13-3(b)(1)(C)..........................17,22

<u>N.J. Ct. R.</u> 3:21-10(b)(5)..........................34,37

<u>Other Authorities Cited</u>

<u>N.J. CONST.</u> (1947), art. I, para. 11................44

- x -

## STATEMENT OF PROCEDURAL HISTORY

On December 16, 1991 the Mercer County grand jury returned Indictment 91-12-1439 charging petitioner-defendant William Stovall, as follows:

| Count | Statute | Degree | Crimes |
|-------|---------|--------|--------|
| 1 | N.J.S. 2C:5-2 | Second | Conspiracy to escape |
| 2 | N.J.S. 2C:5-1,29-5a | Second | Attempted escape |
| 4 | N.J.S. 2C:5-1,29-6a(2) | Second | Attempted procuring of escape implements |
| 6 | N.J.S. 2C:5-1,39-4a | Second | Attempted possession of firearms for unlawful purposes |
| 7 | N.J.S. 2C:5-1,39-4c | Third | Attempted possession of destructive devices for unlawful purposes |
| 8 | N.J.S. 2C:5-1,39-5b | Third | Attempted unlawful possession of handguns |
| 9 | N.J.S. 2C:5-1,39-5f | Third | Attempted unlawful possession of assault firearms |
| 10 | N.J.S. 2C:5-1,39-3a | Third | Attempted unlawful possession of a prohibited device |
| 11 | N.J.S. 2C:5-1,39-3c | Fourth | Attempted unlawful possession of a silencer |
| 12 | N.J.S. 2C:5-1,39-3f(2) | Fourth | Attempted unlawful possession of body armor piercing ammunition |

[Da 1 to 12; Pet. para. 5].

1

The two remaining counts, three and five, charged co-defendant Denard Pinckney, who was severed prior to trial.

On April 29, 1994 a jury convicted petitioner of all counts in the Superior Court of New Jersey, Law Division of Mercer County.  [Da 1 to 14; Pet. para. 6].

On June 17, 1994 Judge Schroth, sentenced petitioner on the ten counts he was convicted of at a jury trial.  Concurrent is reflected as to every count within the initial judgment of conviction, except for count two.  Count two is reflected as consecutive to the sentence petitioner was serving at the time of sentencing.  This results in an aggregate sentence of 20 years total with 10 years parole ineligibility.

However, upon further examination this is obviously erroneous.  With realistic candor, while it would benefit petitioner, it is admitted to urge this document controls would be contrary to the well-established principle, a criminal defendant, (or any party in any litigation for that matter), cannot inure benefit based on any obvious omission, clerical or typographical error, or as here, an erroneous contradiction.

Accordingly, petitioner is aware basing arguments contrary to these principles could be readily classified as ridiculous baseless assertions resultant in summary denial, and will refrain from such.

Both the sentencing transcript, (which petitioner is aware does control), and which contradicts the judgment itself, as well as the Appellate Division ruling on direct appeal does, (again admittedly to the detriment of petitioner), correctly reflect otherwise.

The stenographic transcript of the judge's statement at the original sentencing in 1994 makes it obvious that he verbally imposed a 30 year sentence with 20 years of parole ineligibility.  Subsequent to that someone completed a typewritten judgment of conviction reflecting at the most, a 20 year sentence with 10 years of parole ineligibility, which he signed.

At most, because the attachment detailing the sentences imposed on each count viewed alone results in a conclusion that but a 20 year term with 10 years of parole ineligibility was the result.

What actually transpired at sentencing was the court dismissed count one, conspiracy, as merged into the substantive convictions.  On count two, a motion for an extended term was granted.  The court imposed 20 years with 10 years parole ineligibility consecutive to sentences previously imposed, and to serve in the future.

On count four, a consecutive sentence of 10 years with 10 years of parole ineligibility was imposed, "as mandated by

3

N.J.S. 2C:43-6g."  A concurrent sentence of 10 years with 10 years of parole ineligibility was imposed on count six.  All other sentences on the remainder of the counts were ordered run concurrent.  [Da 15 to 18; Pet. para. 1 to 7].

On December 2, 1996 the Superior Court of New Jersey, Appellate Division affirmed the convictions, but remanded the matter for resentencing as to the aggregate term of 30 years with 20 years parole ineligibility.  [Da 19 to 38; Pet. para. 8, 9(a) to (f)].  (Therein, that court correctly referred to what the sentencing judge had accomplished consistent with what the verbatim transcript reflected).

On March 19, 1997 the Supreme Court of New Jersey denied a petition for certification.  State v. Stovall, 149 N.J. 35 (1997).  [Pet. para. 9(g)(1) to (6)].

Petitioner did not file a timely petition for certiorari with the Supreme Court of the United States.  [Pet. para. 9(h)].

On May 21, 1997 the Hon. Rosemarie Williams, J.S.C. resentenced petitioner to 20 years.  [Da 39 to 40; Pet. para. 33].

On November 17, 1997 a petition for post-conviction relief was filed.  [Da 41; Pet. para. 11(a)(1) to (5)].

On May 1, 1998 Assistant Prosecutor Hand contacted Judge Williams and stated that the custodial term was 20 years on the

judgment of conviction and should be 30 years with 15 parole ineligibility.  [Da 42].

On May 6, 1998 petitioner was resentenced to an aggregate term of thirty years with ten years parole ineligibility, as follows:

| Counts | Criminal Offenses | Sentences |
|--------|-------------------|-----------|
| 1 | Conspiracy | Count vacated |
| 2 | Attempted escape | 20 years, 10 years minimum (Consecutive to prior sentences being served) |
| 4 | Attempted procuring of escape implements | 10 years, (Consecutive to Count 2) |
| 6 | Attempted possession of weapons for unlawful purposes | 10 years 5 years minimum (Concurrent) |
| 7 | Attempted unlawful possession of a weapon | 10 years (Concurrent) |
| 8 | Attempted unlawful possession of a weapon | 5 years (Concurrent) |
| 9 | Attempted unlawful possession of a weapon | 5 years (Concurrent) |
| 10 | Attempted unlawful possession of a prohibited device | 5 years (Concurrent) |
| 11 | Attempted unlawful possession of a prohibited device | 18 months (Concurrent) |
| 12 | Attempted unlawful possession of a prohibited device | 18 months (Concurrent) |

[Da 43 to 44].

5

On August 11, 2005 the Hon. Bill Mathesius, J.S.C., Law Division of Mercer County, stated in writing that a post-conviction petition was not time barred.  [Da 45].

On September 19, 2012 a post-conviction petition was denied in the Law Division.  [Da 46 to 47; Pet. para. 11(a)(6) to (8); Attachment 1.1 to 1.14].

On February 17, 2016 a panel of the Superior Court of New Jersey, Appellate Division affirmed the denial of post-conviction relief.  [Da 46 to 55; Attachment 2.1 to 2.10].

On June 27, 2016 petitioner filed a motion to correct an illegal sentence in the Law Division, with a brief in support. [Da 58 to 89; Pet. para. 11(b)(1) to (5)].

On July 11, 2016 the Supreme Court denied certification relative to the denial of post-conviction relief.  State v. Stovall, 227 N.J. 21 (2016).  [Da 90; Pet. para. 11(d)(1)].

On May 30, 2017 petitioner filed a supplemental brief in the Law Division regarding his pending motion to correct an illegal sentence.  [Da 91 to 149].

On August 29, 2017 the Hon. Thomas M. Brown, J.S.C., Law Division of Mercer County, denied the motion.  [Da 150 to 153; Pet. para. 11(d)(2); Attachment 3.1 to 3.4].

On October 3, 2017 a timely notice of appeal, the required criminal case information statement, and motions to proceed as

an indigent and accelerate the appeal were filed.  [Da 154 to 161].

On December 18, 2017 the Hon. Carmen Messano, P.J.A.D., granted the motion to proceed as an indigent, and denied the motion to accelerate.  [Da 162; 163].

On September 4, 2019 the Superior Court of New Jersey, Appellate Division affirmed the denial of the motion to correct an illegal sentence.  [Pet. para. 11(d)(6); Attachment 4.1 to 4.14].

On January 28, 2020 the Supreme Court of New Jersey denied a petition for certification.  State v. Stovall, ___ N.J. ___ (2019).  [Pet. para. 11(e)].

Petitioner has a future Pennsylvania sentence to serve which is concurrent with an additional New Jersey sentence and a federal parole violation.  [Pet. para. 17(a) to (d)].

## STATEMENT OF FACTS

**a.  Trial Testimony:**

    **(1)  The Prosecution**

The state presented testimony reflecting the following sequence of events:

On February 7, 1991 inmate Daniel Ducret who was confined at Trenton State Prison wrote investigator Albert Melendez of the internal affairs unit at the prison.  [8T 22-1 to 5].

On February 13, 1991 Melendez received the letter.  [8T 20-10 to 22].  In it Ducret related that a prisoner known as Kareem approached him with an escape plan.  [8T 21-3 to 21].  Upon receipt Melendez informed his supervisor, James West, and Debbie Fonz who was also with the unit.  He then arranged to interview Ducret.  [8T 22-6 to 13; 53-18 to 54-8].

Melendez then conducted the interview with West present. At this time Ducret admitted he wrote the letter and provided more specific information.  [8T 23-7 to 10 23-16 to 24-3].  That information consisted of Kareem planning to use two nine millimeter pistols and two .380 pistols to carry out the plan. [8T 28-15 to 24].  At the time he was housed in the administrative segregation unit, seven right.  Kareem was the phone runner and was housed on the same tier or floor.  [8T 24-8 to 15; 25-1 to 14; 26-13 to 18].

After this interview ended Melendez took steps to verify Ducret's information. [8T 24-4 to 7]. He also told him to get Kareem's full name and any other pertinent information. [8T 24-19 to 25]. Melendez then discovered the phone runner on seven right was petitioner, [8T 30-4 to 10] and that he was serving 75 years with 36 years parole ineligibility. [8T 3112 to 18]. He also received a second letter from Ducret dated the same day as the interview. [8T 31-25 to 32-4]. Therein, Ducret related he had provided the identity of the person planning this escape and expressed concerns for his safety, wanted the information kept confidential, and offered his full cooperation, as he had earlier. [8T 32-10 to 14].

On February 16 or 19, 1991 Ducret was subject to a polygraph administered by senior investigator/polygraphist D. Davey, and concluded "her" examination revealed petitioner had approached Ducret about an escape plan. [8T 150-24 to 151-8; Pa 1 to 2]. (Since trial of this matter was had in April of 1994, in excess of three years later, D. Davey may have been the Debbie Fonz whose name differed because of a change in marital status, that Melendez referred to in his trial testimony).

In early March, 1991 Melendez contacted the special investigative unit of the Mercer county prosecutor's office because his office was not equipped to handle a situation where

weapons were used and lives could be in jeopardy.  [8T 33-21 to 34-6; 35-1 to 3].

On March 5, 1991 *after corroboration* of Ducret's information Melendez and West had a meeting with personnel from the special investigative unit.  Among them were Lieutenant Al Heyessey and investigator John Fredericks.  [8T 36-5 to 8].  At the meeting Melendez *shared the information they had obtained thus far* and requested assistance.  [8T 36-9 to 16].  Heyessey decided his office would assist in the investigation and eventually they took it over.  Ducret was provided a phone number for Fredericks who was to be his contact person to provide additional information to.  [8T 36-1 to 37-3].  (Emphasis Added).

Subsequent to the takeover of the investigation by the special unit Melendez remained available only to assist.  [8T 37-25 to 38-2].  Although no promises were not made to Ducret by Melendez for his cooperation he was moved to another prison when the investigation concluded.  [8T 38-1 to 39-9; 41-4 to 14].

On March 22, 1991 a phone call was made by Ducret to detective Amalio Nieves of the New Jersey state police who posed as a gun and explosives dealer from New York to arrange for him to visit petitioner at the prison.  [9T 38-8 to 15].

On March 25, 1991 Nieves visited petitioner.  [9T 41-4 to 14].  During the visit petitioner pulled out a tiny piece of

paper and a small pencil.  On it, he wrote what he wanted.  This consisted of two machine guns with silencers, one nine millimeter automatic, one .25 automatic and C4 explosives with caps.  [9T 47-13 to 49-8].  Nieves stated he would provide only one machine gun, but petitioner told him extra funds were available for a second.  [9T 49-9 to 22].  Petitioner further indicated he desired armor piercing bullets.  [9T 50-15 to 25].  Petitioner then pulled out a second piece of paper on which he wrote down a beeper number for him and his associates to contact Nieves to arrange for delivery of the weapons.  [9T 52-10 to 18].  He told the detective someone would be in contact in 60 to 90 days.  [9T 55-16 to 20].  Nieves responded he wanted Ducret taken care of and petitioner responded that this would occur with neither clarifying the meaning of this terminology.  [9T 55-21 to 56-6].

On March 28, 1991 Nieves received a phone call from Ducret and petitioner.  [9T 58-1 to 25].  This was at a new number to a mobile phone with a New York area code at which he could tape the calls.  [9T 60-7 to 14; 62-10 to 12].

On April 18, 1991 at approximately 12:10 p.m. Nieves got a phone call from petitioner which he recorded.  [9T 61-22 to 25; 62-10 to 20].  In it petitioner advised arrangements were in progress for him to be paid for the weapons.  During it there was a discussion of a change from two machine guns to one.  [9T

68-1 to 10; 68-18 to 69-13]. They also discussed the amount due and the place where petitioner's associates would pick them up. [9T 70-6 to 19; 70-24 to 71-6]. Nieves told petitioner the final arrangements for pickup would be between Nieves and the person making the pickup. [9T 71-7 to 15].

On April 29, 1991 Nieves received another phone call from petitioner which he also recorded. [9T 73-6 to 19; 74-7 to 17]. Petitioner again stated he was making arrangements for the funds due. [9T 73-6 to 24; 75-23 to 76-3]. He also stated someone on the outside would contact Nieves between April 29 and May 1. [9T 76-6 to 20].

On April 30, 1991 at 12:20 p.m. petitioner made his next call to Nieves, which was also recorded. [9T 76-21 to 25; 77-2 to 6]. Petitioner and another man later identified as Denard Pinckney were on the phone on this occasion. [9T 77-7 to 19]. They discussed a spot to meet and Nieves suggested the Quakerbridge mall on Route 1 in New Jersey. [9T 77-20 to 78-6]. Petitioner wanted Nieves to meet Pinckney in Philadelphia, but the detective refused. [9T 80-9 to 19; 81-20 to 17].

A second call was received by the detective from Pinckney, which he recorded. [9T 82-1 to 24; 82-25 to 83-14]. At this time the two planned to meet on May 2, 1991 so they could close the weapons deal. [9T 85-15 to 86-2].

12

On May 2, 1991 a team of investigators set up a surveillance team to accompany Nieves to the mall in order to record conversations between the two as the detective was to wear a body transmitter. [9T 86-3 to 17]. Nieves was provided an inoperable nine-millimeter Beretta handgun and a block of inert C4 explosives to display in the trunk of his car. [9T 87-5 to 16]. He then proceeded to the mall but no one showed up. Nieves then received a call from Pinckney, which he recorded. [9T 90-24 to 25]. In the call, Pinckney related he could not make it but would be there tomorrow. [9T 88-6 to 20; 89-3 to 7].

On May 3, 1991 the detective and the surveillance team returned to the mall with the same objects for display in the trunk of his car. [9T 94-6 to 24]. This time he met Pinckney. [9T 95-20 to 96-1]. They then went inside the mall to eat and have a conversation. [9T 9-2 to 7]. At this time Pinckney, he was aware the mount due for the guns and explosives was $ 700. Nieves told him he had a Mach ten machine gun, a nine-millimeter automatic, a .25 automatic, four pounds of C4 explosives, detonation cord with blasting caps, and armor piercing bullets. [9T 96-8 to 16]. They agreed to meet again on May 8, 1991 to conclude the deal. [9T 97-5 to 9].

Then Pinckney showed the detective his car in the parking lot, which was a tan Buick with Pennsylvania plates. [9T 96-20

to 97-4].  Nieves then went over to his car, opened the trunk
and displayed the guns and explosives to Pinckney who picked up
the Beretta and stated it was okay.  [9T 97-10 to 21].  Nieves
informed Pinckney he wanted to deal with him only.  He responded
that he would be alone for the May 8, 1991 meeting.  [9T 101-7
to 102-9].  The conversations outside the mall as well as the
actions of the two were recorded audibly and visually, by the
other police present.  [9T 97-22 to 99-6].

On May 8, 1991 Nieves took the machine gun, the Browning
nine-millimeter automatic, the Raven automatic, a bag with 95
bullets and a block of inert C4 to the mall, and was accompanied
by other officers.  [9T 108-12 to 21; 109-12 to 111-1].
Pinckney was present, inspected what Nieves had, gave him $ 700
and left with the guns, ammunition and explosives.  [9T 111-2 to
12]. The others accomplished video and audio recording of this.
[9T 111-22 to 25; 117-14 to 16].

The other officers followed Pinckney when he left.  [11T
111-2 to 19].  He drove over a bridge into Pennsylvania and then
to a residence located in Philadelphia owned by his sister where
he was arrested.  There, they found the guns and explosives on a
bookcase in the basement.  [11T 117-2 to 118-1 127-5 to 128-8].
A guard searched petitioner at the prison, which yielded a piece
of paper with phone numbers in his shoe. [11T 77-9 to 78-22].

### (2)   The Defense

Petitioner testified in his defense.  He stated that he was incarcerated at the prison and had been assigned to the management control unit for approximately a year.  [12T 19-15 to 20-5].  He noticed Ducret the first time in January 1991 when Ducret was brought to the administrative segregation unit that he was in.  [12T 47-10 to 48-6].  At the time petitioner was the tier runner.  [12T 21-22 to 22-9].  As that time he was responsible for cleaning the tier, taking a list of the prisoners for showers passing the phone, and informing guards of any needs of the prisoners.  [12T 21-11 to 21].

After Ducret arrived petitioner gave him the phone to use. [12T 50-17 to 20].  Petitioner had his first conversation with him regarding weapons on January 31, 1991 when there was a general discussion about the topic on the tier.  [12T 54-8 to 55-14].  Later in the day, Ducret asked petitioner if he wanted to make some money from an arms deal.  [12T 55-15 to 56-13].  At first petitioner was uninterested.  [12T 56-14 to 17].  However, later they started discussing how to purchase arms.  [12T 70-6 to 15].  The two then made an agreement on a purchase.  [12T 74-21 to 75-11].  Petitioner did not take the conversation serious until he got a visit from Nieves.  [12T 75-14 to 19].

Petitioner met with the undercover detective because Ducret was not allowed visitors.  [12T 75-20 to 76-4].  Prior to the

15

visit Ducret told petitioner to act like a big bad gangster with connections to drug dealers and street guys.  [12T 76-5 to 18]. Ducret further informed petitioner to request to buy two nine millimeters, two Mach tens, two .380's, silencers, bullets, armor piercing bullets and plastic explosives.  [12T 76-19 to 77-3].  He also told petitioner to take a piece of paper and pencil to the meeting because Nieves would give him a phone number if he agreed to the deal.  [12T 77-21 to 78-6].

Nieves then visited petitioner.  [12T 78-7 to 14].  At this time, they discussed a location for the exchange.  [12T 115-5 to 117-7].  Petitioner went on to explain it was impossible to bring the guns into the prison and because of this impossibility, he never had a discussion with Ducret regarding it.  [12T 86-1 to 9].  He further testified there was no discussion regarding an escape with Ducret or anyone else.  [12T 70-2 to 5; 85-20 to 25; 1178 to 20].  The only agreement he made with Ducret was to purchase arms for resale.  [12T 117-21 to 2].

Carl Young and Jose Attaro testified Ducret had approached them for involvement in a scheme to purchase weapons for resale. [12T 139-18 to 140-7; 166-5 to 167-2].  Pinckney, who was petitioner's brother, got involved in the deal after petitioner requested him to get the arms and put them in his sister's basement until a guy from Florida that Ducret sent, came to get

them.  [12T 96-1 to 20].  Petitioner was aware his brother paid

Nieves $ 700 for the guns and explosives.  [12T 96-21 to 25].

**b.  The Court's Charge and Verdict**

On April 29, 1994 during his jury charge regarding the

attempted escape charge, Count Two, Judge Schroth instructed the

jury as follows:

> "The grand jurors of the state of New
> Jersey of Mercer present that on or about
> May 8, 1991 William Stovall did without
> lawful authority to remove himself from
> official detention at the New Jersey state
> prison, and did employ deadly weapons or
> other dangerous instruments in said attempt
> to escape."

[13T 40-1 to 3, -18 to 25].

He went on to define attempting to escape by instructing that,

> "The defendant is charged with the
> crime of attempting to escape.  By
> definition, a person commits this crime if
> without lawful authority, the person removes
> himself from official detention, or attempts
> to.
>
> "To obtain a conviction on this charge,
> the state must prove each of the following
> elements beyond a reasonable doubt.  One,
> the defendant was the subject of an official
> detention, two, that the defendant attempted
> to remove himself, three, that the defendant
> acted without lawful authority, and four
> that the defendant acted knowingly."

[13T 41-4 to 13].

The trial court went on as to degree of the offense in

instructing that:

17

"If your verdict is guilty for escape,
you must deliberate further to determine the
degree of offense.  Under our law, escape is
ordinarily a crime of the third degree.
However, it is elevated to a crime of the
second degree where there is proof beyond a
reasonable doubt that the actor attempted to
employ force, threat, a deadly weapon or
other dangerous instrumentality to effect
the escape.

"If you find that the state has proven
beyond a reasonable doubt that the defendant
committed the crime of escape, but also that
the defendant did so by the use of force,
threat, a deadly weapon or some other
dangerous instrumentality; then your verdict
should be guilty of the escape in the *second
degree*."

[13T 43-4 to 18].

(Emphasis Added).

After relating, this the court instructed the jury

regarding third degree escape as an included offense, noting

that, "on the other hand if the state fails to prove all of the

required elements of second degree escape" an alternative

available was  to convict petitioner of third degree escape.

[13T 43-18 to 25].

Later that day, the jury returned its verdict during which

the following colloquy ensued:

"The Court:  Madam foreperson, on to
criminal attempt to commit escape in the
second degree, how do you find the
defendant, William Stovall?

Forelady:  Guilty.

The Court:  Madam foreperson, as to count
four, criminal attempt to procure elements
of escape, (second degree)?

Forelady:  Guilty."

[13T 78-13 to 16, -19 to 22].

## c.    Receipt of Melendez Report

On May 13, 1991 the Mercer County prosecutor's office

received Melendez's report of his investigation from March 5 to

April 13, 1991,  [Pa 1 to 2], which included D. Davey's

conclusion after performing the polygraph, [Pa 2].  These

constitute materials available to petitioner's counsel within

seven days of indictment pursuant to N.J. Ct. R. 3:13-

3(b)(1)(C), (which include all scientific experiments or tests

and results thereof), consistent with Brady v. Maryland, 373

U.S. 83 (1963).

**d.   Post-Conviction Hearing, Motion To Correct Illegal Sentence**

On September 14, 2012 a petition for post-conviction relief was heard before the Hon. Thomas M. Brown, J.S.C.  During the hearing on the petition, petitioner requested counsel to make an oral motion regarding merger of the counts.  The court stated the matter was not before the court.  The judge stated other issues would be considered out of time, but that petitioner could file a motion regarding an illegal sentence.  [15T 19-24 to 21-24].

On August 29, 2017 contrary to his foregoing statement, Judge Brown went on to characterize petitioner's motion to correct an illegal sentence as "moot."   [Da 150 to 153].

**LEGAL ARGUMENT:**

**INTRODUCTION AND JURISDICTINAL STATEMENT
PETITIONER'S HABEAS PETITION IS TIMELY FILED
THUS THIS COURT HAS JURISDICTION TO MAKE A
DECISION ON THE SUBSTANTIVE MERITS.**

Since the procedural history in state courts is rather
protracted and contains overlaps, where a motion to correct an
illegal sentence was filed prior to a denial of review this is
provided for the court's understanding of what transpired.

a. Conviction and Direct Appeal

On June 17, 1994 petitioner was sentenced in the Superior
Court of New Jersey, Law Division of Mercer County, after
conviction at a jury trial.

On December 2, 1996 the Superior Court of New Jersey,
Appellate Division affirmed the convictions on direct appeal, but
remanded for resentencing.

On March 19, 1997 the Supreme Court of New Jersey denied
certification as to the ruling of the Appellate Division, thus
concluding petitioner's direct appellate remedies in state court.
State v. Stovall, 149 N.J. 35 (1997).

On June 17, 1997 petitioner's time to timely, file a
petition for certiorari expired, thus concluding all direct
appellate redress available. 28 U.S.C. 2244(d)(1)(A).

b. Post-Conviction Proceedings

On November 17, 1997, (some 153 days later), petitioner filed a petition for post-conviction relief with the Superior Court of New Jersey, Law Division of Mercer County.

On September 4, 2012, (nearly 15 years after it was filed), that court denied the petition.

On February 17, 2016 the Superior Court of New Jersey, Appellate Division affirmed the denial of relief entered by the Law Division.

On July 11, 2016 the Supreme Court of New Jersey denied petitioner's petition for certification regarding the Appellate Division ruling.

c. Motion To Correct An Illegal Sentence

On June 27, 2016 filed a motion to correct an illegal sentence in the Superior Court of New Jersey, Law Division of Mercer County.

On August 29, 2017 the motion was denied.

On September 4, 2019 the Superior Court of New Jersey, Appellate Division affirmed the denial of the motion.

On January 28, 2020 the Supreme Court of New Jersey denied petitioner's petition for certification relative to the Appellate Division's affirmance of the motion to correct an illegal sentence.

Initially, 153 days were consumed prior to petitioner's filing of his petition for post-conviction relief. The sole other period during which there was no impediment of state exhaustion of issues, is the time from the denial of certification until the filing of this petition. Since that period is far less than 365 days, it renders this petition timely.

## GROUND ONE

**ADMISSION OF UNSTIPULATED POLYGRAPH EVIDENCE VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHT TO FAIR TRIAL AND EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, AND FOURTEENTH AMENDMENT DUE PROCESS WHEN TRIAL COUNSEL PERMITTED THIS TO COME BEFORE THE JURY WITHOUT EITHER A REQUEST FOR MISTRIAL OR CURATIVE INSTRUCTIONS.**

In presentation of their case at trial, the state was forced to rely solely on Ducret as an actual witness who could recount what petitioner purportedly related to him.  Because of this petitioner could have persuaded the jury this was all a concoction of his manufactured to gain release from prison with the expense of petitioner being convicted.  Based on this it was obvious from the outset conviction of petitioner hinged virtually totally on Ducret's credibility.

With this set of attendant circumstances, it required no genius to conclude any opportunity to enhance his believability would be tantamount to foreclosing any possibility of a fair trial at which acquittal remained a possibility.  Aware of this, Ducret referred to taking a polygraph in response to a question from defense counsel.  Counsel, recognized the harm but voiced no objection.  Neither, did he move to strike the answer, request a mistrial or move for curative instructions.  Yet again, an investigator referred to the polygraph, and again

24

counsel took no action whatsoever.  Clearly, the reemphasizing of this by a second witness helped seal petitioner's fate.

What is particularly egregious as to what transpired here is that counsel was required to investigate all factual and legal theories applicable thoroughly.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The action taken when this initially occurred of transition into another area may have been constitutionally tolerable.  If anything what it appears to reveal is that counsel was well aware exploration of this topic was extremely detrimental to his client.

Not being prepared for the possibility of a polygraph test at any criminal trial is troubling.  In this one: (a) a test was administered; (b) the results were in the hands of the prosecutor five days after petitioner's brother was arrested and three years prior to trial; and (c) this information was discoverable within seven days of indictment.  This provision is in N.J. Ct. R. 3:13-3(b)(1)(C), (which include all scientific experiments or tests and results thereof), consistent with Brady v. Maryland, infra.  [Pa 1 to 2].  This information was available to counsel within seven days of the December 16, 1991 indictment.  [Da 1 to 12].

Petitioner submits the Supreme Court has addressed this specific situation for the first time in United States v. Scheffer, 523 U.S. 306 (1998).  However, of the highest import

is that the conclusion reached was the result of precisely the same constitutional reasoning utilized in Rock v. Arkansas, 97 L.Ed.2d 37 (1987).  In Rock the court held that when a state murder defendant underwent hypnosis to refresh his memory of germane events and his recounting of those events was barred, no constitutional right of impeding his defense was had since the evidence derived was scientifically unreliable.

In Scheffer, defendant sought introduction of polygraph results at a court martial.  Since M.R. Evid. 707 precluded all results of polygraphs as unreliable the court failed to find any constitutional error as in Rock.  This logic was also premised on Crane v. Kentucky, 476 U.S. 683, 690 (1986) wherein it was held courts have wide latitude at their discretion to exclude extrinsic extraneous information which should be resorted to for protection of the constitutional guarantees of fair trial and due process.  Scheffer, at 308.

Moreover, most recently in United States v. Gonzalez, 905 F.3d 165, 204 (3rd Cir. 2018) when a defendant sought to introduce rebuttal evidence of polygraph results, the results were again disallowed as unreliable.

This case law is demonstrative of several things.  First, Crane and Rock were decided in advance of this criminal incident even occurring, and controlled.  Absent proven scientific reliability of any methodology, courts were not inclined to

admit such evidence in behalf of either the defense or prosecution.  Second, upon an issue of first impression regarding polygraph evidence the Supreme Court found no violation in a rule provision totally barring all polygraph evidence in court martials.  By inference, the court found in Scheffer there was a presumption of correctness to rule provisions governing admissibility where a case was tried that _did_ not fail to provide constitutional protections.  (Emphasis Added).  Third, in Gonzalez the third circuit found no scientific developments justifying admission.

Of the utmost import is in Rock, Scheffer and Gonzalez these were all instances of defendants attempting to urge admissibility.  If anything, criminal defendants are in an extremely more precarious position than the prosecution.  An unfavorable result caused by omission of relevant evidence may be accompanied by a loss of liberty or even life.  Accordingly, questionable evidence, which may be disallowed if sought by the prosecution, could conceivably be admitted in support of a defense consistent with providing constitutionally required fair trial or due process.

Bearing in mind the high court attaches a presumption of correctness to law within the jurisdiction the matter is tried in, Scheffer, _infra_, this court is constrained to examine the applicable law within this jurisdiction.  This first occurred in

excess of 30 years prior to trial.  State v. Arnwine, 67 N.J.
Super. 483 (App. Div. 1961).  However, not investigating this
after it transpired once and permitting it to be reinforced to
the jury without investigating the status of the law is a
compromise of a serious constitutional magnitude.  Especially
when it came about when a detective was questioned as to if he
attempted to corroborate Ducret's testimony and he responded by
inferred reference to use of a polygraph.  Absent his testimony,
the initial resort to this area had the effect of inferring the
polygraph did corroborate his testimony, or the detective would
never have referred to it.

Petitioner submits the second reference to a polygraph by
the investigator coupled with Ducret's earlier testimony
regarding it would leave the jury hard pressed not to conclude
the polygraph had confirmed his veracity.  This is a simple
conclusion of reasoning for Ducret who volunteered to testify
against petitioner and the detective were not there to aid
petitioner's cause.  Both were there to provide information they
hoped would lead to his conviction.

In reality, what transpired in Arnwine resembles what
occurred here.  There, the court had held direct evidence of
polygraph evidence was inadmissible prior to trial, just as if a
ruling had been requested as to this based on a thorough review
of discovery here by effectively prepared trial counsel it would

have been exactly the same.  For there a detective testified defendant had been hooked up to a polygraph machine for 40 minutes but it was only operating for 3 1/2.  He further recounted when he asked defendant if he did this to Sandra, defendant responded that if he said I did then I probably did. _Id._, at 487.

On appeal counsel argued this conveyed to the jury the potential results being unfavorable to the accused, at which time the conviction was reversed.   _Id._, at 499.  In this matter, Melendez initially testified he "corroborated" Ducret's testimony.  He alluded to but two other persons in his office, his supervisor, James West and the supervisor of internal affairs, Debbie Fonz.  Immediately after Melendez concluded the prosecution called Ducret.  In turn, his testimony consisted of meeting with Melendez on February 12, 1991 and with a female investigator within a week, on February 16 or 19, 1991 at which time there was little discussion, "it was mainly just for the polygraph."

In early March 1991, Melendez contacted the Mercer County prosecutor's office leading to a meeting with them on March 5, 1991 when he became concerned there was a risk to others outside the prison whose safety he could not protect; facts that Ducret alone had provided the basis for.  This was accomplished by him maintaining petitioner desired·machine guns with silencers,

armor piercing ammunition, and plastic explosives to escape from prison.  It follows the inference, just as in Arnwine, was the result of the polygraph was favorable to the State and directly contributed to petitioner's conviction.

Moreover, there, and notably contrary to here, defendant himself actually admitted his guilt resultant in much more evidence to support the conviction obtained there.

Within New Jersey even prior to Arnwine the court had held in State v. Emery, 27 N.J. 348, 356 (1961) that, "polygraph examinations are not infallible tests to determine truth or deception."

In New Jersey the State Supreme Court was again confronted with the issue in State v. Mc Davitt, 62 N.J. 36 (1972).  On that occasion, it was held admission of such results would only be permitted with a stipulation prior to the admission of such testing.  The matter again came before the courts in State v. Clark, 128 N.J. Super. 120 (1974).  There, an inmate witness to a prison hospital killing testified during cross-examination he decided to tell the truth after he was informed the results of a polygraph revealed he was lying.  His testimony at trial was that he did see the killing by defendant contrary to what he maintained was his initial version in which he did not.  On appeal, the murder conviction was reversed because of the

unconstitutional bolstering of the prosecution witness' credibility.

The two addresses to this within this jurisdiction prior to petitioner's trial were State v. Hollander, 201 N.J. Super. 453 (App. Div. 1985) and State v. Capone, 215 N.J. Super. 497 (App. Div. 1987).  In the first, yet again the court held polygraph results are inadmissible unless there is a stipulation for admissibility prior to administration of it.  Within the second the court held that because there existed a polygraph administered which was the subject of a stipulation it would be non-admissible at trial, there was absolutely no reason for that stipulation to be contradicted regardless of the result or what had transpired at trial.  (Emphasis Added).

Since that time, the New Jersey courts have again addressed this matter.  Interestingly in ruling on petitioner's appeal of the denial of post-conviction relief in 2016 the state court noted within the state polygraph results are generally inadmissible and cited State v. Domicz, 188 N.J. 285 (2006).  [Da 51].

A review of the facts present therein reveals defendant was indicted for drug possession and that police seized such at his residence.  Id., at 289-291.  At trial, the court refused to permit unstipulated polygraph evidence for the defense at a hearing of a motion to suppress.  Ibid, at 292.  On appeal, the

31

Appellate Division reversed holding defendant's rights were violated by failure to admit the evidence. *Domicz*, at 293. The holding consisted of the rationale polygraph evidence should be admissible when credibility is an issue and the arbiter of fact is non-jury. *Id.*, at 295.

The State Supreme Court considered the matter and noted defendant did not offer proof polygraph techniques had progressed since *Mc Davitt* to ensure enhanced scientific reliability. *Ibid*, at 310-11. Accordingly, the ruling of the Appellate Division was reversed and the court went on to note a majority of the states prohibit polygraph evidence as unreliable specifically noting that New Mexico appeared to be the sole state, which permitted admission absent a prior stipulation. *Domicz*, at 313. In so ruling the court held it was not inclined to extend polygraph admissibility to hearings presided over by judges who are sufficiently equipped to make credibility determinations absent polygraph evidence without prior stipulation. *Id.*, at 313-314.

Finally, the court concluded that the proposed solution permitted by the Appellate Division was not workable in non-jury situations. This was because if a defendant sought admission of testimony by a polygraphist the court could order him to be subjected to a second polygraph by a different polygraphist with the court having to choose between the testimony of the two.

This logic was premised on insanity defenses where the court was forced into such a procedure. Ibid, at 313-314.

The New Jersey courts went on to confront the issue again. State V. A.O., 198 N.J. 69 (2009); State v. Mervilus, 418 N.J. Super. 138 (App. Div. 2011); J.B. V. New Jersey State Parole Board, 229 N.J. 21 (2017). In A.O. the court clarified that 28 states bar all polygraph evidence in any situations, 18 consider admissibility only upon prior stipulation of the parties, and that only New Mexico permits absent a prior stipulation. Id., at 84. A.O. also made note admissibility occurs only when the stipulation is clear and unequivocal and that Mc Davitt offered no support for situations where a stipulation was made absent counsel. Ibid, at 86-87. Because of this, the court barred uncounseled stipulated polygraph admissibility agreements. A.O., at 90. Of the highest import is that at the time the court noted recent scientific developments continued to cast doubt upon reliability

In Mervilus, the court reversed a conviction when the polygraphist testified as to guilt and innocence even when there was a prior stipulation regarding admissibility. There, the polygraphist testified that in 60 to 70 % of the tests the test confirms the accused is telling the truth and is innocent and law enforcement usually does not go forward with the charges and that in the remaining it usually indicates guilt like in the

case in question.  This impermissibly tainted the jury and the court was constrained to reverse.  *Id.*, at 142.

Finally, in *J.B.*, the court permitted use of polygraph results only as a risk management tool to manage released sex offenders.  This was permitted only because of the employment of special polygraphists trained as to the unique use for sex offenders and their methods of deception.  Despite this, the court was most careful to note the result would not be admissible in court proceedings as proof of a violation of release conditions resultant in re-incarceration.  *Id.*, at 32.

Application of this body of case law to petitioner's matter clearly reveals he is undoubtedly entitled to federal habeas relief because of a compromise of his constitutional rights.

The violations of the principles in <u>Crane</u> and <u>Rock</u> which should have preserved petitioner's constitutional right to a fair trial and due process at the time of trial were clear. Counsel's failure to be prepared by a thorough investigation of legal status of the admission of such evidence, what actions to take if it arose, and that petitioner was entitled to a mistrial or curative instructions are clear.  They make out a clear case of a violation of the right to effective assistance of trial counsel by <u>Strickland</u> requiring habeas relief.

In sum, <u>Crane</u> and <u>Rock</u> controlled regarding admission of scientific evidence at the time of petitioner's trial.  Trial

counsel's inaction when this evidence came in was unconscionable.  It clearly represents a failure to conduct adequate legal investigations necessary pursuant to Strickland.

Since the matter came down totally to credibility the jury was confronted with whether to believe petitioner and his two witnesses or Ducret.  To conclude Ducret was more reliable based on enhancement of his credibility with reference to a polygraph is virtually inescapable.  Accordingly, habeas relief is fully warranted, because of trial counsel's failures to act as detailed within this Ground.

## GROUND TWO

**ADMISSION OF POLYGRAPH EVIDENCE VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHT TO FAIR TRIAL AND EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS WHEN APPELLATE COUNSEL PERMITTED THIS EVIDENCE BEFORE THE JURY WITHOUT EITHER A REQUEST FOR MISTRIAL OR CURATIVE INSTRUCTIONS AT TRIAL, NOT BE CHALLENGED ON AN APPEAL AS OF RIGHT.**

Petitioner submits the failure of appellate counsel to raise the admission of the unstipulated polygraph evidence in evidence before the jury absent curative instructions or a motion for mistrial prohibiting the evidence, was due to ineffective assistance of trial counsel, rendered appellate counsel ineffective.  Moreover, this constitutes a clear constitutional violation of the Sixth and Fourteenth Amendment rights of effective counsel on an appeal as of right.  Douglas v. California, 372 U.S. 353, 355-357 (1963); Evitts v. Lucey, 469 U.S. 387, 396 (1985).

Petitioner submits this is so since N.J. Ct. R. 2:3-2 makes it clear in imperative terms that, "...in any criminal action any defendant ... may appeal... .".  (Emphasis Added).

In the interests of brevity petitioner will merely rely on the urgings made within Ground One to show that it was clear if appellate counsel had merely reviewed the trial transcripts and discovery available to counsel, it was obvious he was grossly unprepared. The report of Melendez referring to a polygraph was

36

available to trial counsel in December 1991 [Pa 2], far in advance of petitioner's 1994 jury trial.  [Da 13 to 14].  Not to familiarize himself with New Jersey precedent, and Crane and Rock regarding questionable scientific techniques was inexcusable.

Additionally, failing to move for a mistrial or requesting curative instructions, if denied, directly contributed to petitioner's convictions.  This is especially so since the entire case hinged on credibility determinations.  Petitioner and two other prisoners testified Ducret approached them for participation in an arms resale deal for profit, absent any conspiracy to escape.  When his credibility was enhanced by both Melendez and himself referring to the polygraph it was inevitable petitioner would be convicted as to the escape charges as opposed to only attempting to profiteer off the weapons.

Failing to present this on direct appeal was a great disservice and served to violate petitioner's constitutional rights requiring habeas relief for violation of the Supreme Court law noted herein, as to admissibility of scientific evidence.

## GROUND THREE

**ALTERNATIVELY, THE SENTENCE PETITIONER IS
CONFINED PURSUANT TO VIOLATES DOUBLE
JEOPARDY AND DUE PROCESS CONTRARY TO THE
FIFTH AND FOURTEENTH AMENDMENTS.**

**a.   The Motion Was Timely Filed, and The State Courts Denied Due
Process By Failing To Rule On The Merits Of It.**

Within his ruling defendant's motion to correct an illegal

sentence pursuant to N.J. Ct. R. 3:21-10(b)(5) Judge Brown made

no reference to this rule which permits the filing of such

motion, "at any time."   Instead, he held the motion was moot and

went on to rule in a letter opinion addressed to petitioner his

conclusion was premised on the facts that, "you have already

exhausted your appeal remedies and your post-conviction

remedies."

Petitioner takes no exception to either of these statements

being true.   However, as to the logic that these occurrences

deprived Judge Brown of jurisdiction, and the exhaustion of

these processes in any way rendered his motion moot, he does.

A review of what transpired prior to this ruling reveals

the matter was before this court on two prior occasions.   First,

on direct appeal in 1996, and again on an unsuccessful appeal of

a petition for post-conviction relief in 2016.

As to pursuit of direct appeal, the New Jersey appellate

courts were under no duty to review issues not before them.   The

appeal was limited yet further to conduct a limited review of

arguments presented if not objected to below unless such amounted to constitutional error. N.J. Ct. R. 2:10-2; State v. Corby, 28 N.J. 106 (1958); State v. Macon, 57 N.J. 325 (1971); Chapman v. California, 386 U.S. 18 (1967).

At the outset, the governing rule clearly does not provide the courts are to conduct an exhaustive review of every appeal brought for every type of conceivable infirmity in both civil and criminal matters. As a practical matter, this is an impossibility with judicial resources what they are. To comb over the entirety of the record would permit matters to remain pending for years absent a ruling. If anything a careful reading of this rule demonstrates examination of allegations of error actually presented is constrained yet further to ones objected to below. The clear intent here was that if trial counsel felt an error was not present, or of little significance, appellate counsel should be precluded from inundating an appellate tribunal with a multitude of alleged errors after application of hindsight.

With these principles in mind, it is of note the two panels which ruled on petitioner's direct appeal and post-conviction appeal, never had this issue before them. On the first occasion in 1996 that panel was presented with the legality of the ten year sentence on count four during which petitioner was ineligible for parole for the entirety of it, and reversed in

holding *only that* the period of parole ineligibility was illegal

after the state conceded it was.  (Emphasis Added).  The

argument regarding merger or concurrency was noticeably absent.

In 2016, on appeal of the denial of a petition for post-

conviction relief, that panel was confronted only with the

allegation that evidence of a witness being subjected to  a

polygraph examination should not have come before defendant's

jury.  Moreover, it was Judge Brown himself who constituted the

reason why this issue was not before the court at that time.

This came about in 2012 when he ruled he would not consider

illegality of sentence at that time.  For Judge Brown to fail to

rule on this issue when the post-conviction petition was

pending, and to later classify the issue as moot predicated on

that petition being earlier disposed of places petitioner in a

predicament whereby he was never legally permitted to present

the argument the sentence is illegal.

This type of legal rationale is totally illogical.  Yet

further, this is at odds with the content of N.J. Ct. R. 1:1-2

that all court rules,

> "... *shall* be construed to secure a just
> determination, simplicity in procedure,
> fairness in administration and elimination
> of unjustifiable expense and delay."

> (Emphasis Added).

Embodying the same logic the New Jersey Supreme Court held in
Ragusa v. Lau, 119 N.J. 276, 283-284 (1990) that relative to
court rules they should function for,

> "Reasonable uniformity in the
> *expeditious* and even administration of
> justice."

> (Emphasis Added).

Respectfully, it is urged that Judge Brown's statement of
not entertaining the illegality of sentence in 2012 only to
conclude five years later opining that issue was moot markedly
fails to further the intent of court rules or the statement in
Ragusa.

It is fundamental that a motion to correct an illegal
sentence may be filed at any time pursuant to N.J. Ct. R. 3:21-
10(b)(5). The state's highest court authored a procedural
ruling in State v. Romero, 191 N.J. 59 (2007) which reiterated
the principles of State v. Paladino, 203 N.J. Super. 537 (App.
Div. 1985). There, it was ruled failure to merge convictions
results in an illegal sentence for which there is no procedural
time limit for rectifying. *Id.*, at 80.

This continues to be the state of the law in the state.
State v. E.W., 413 N.J. Super. 70, 77-78 (App. Div. 2010); State
v. Acevedo, 205 N.J. 40, 47 n. 4 (2011).

Thus, petitioner is rightfully before this court now after
exhaustion of state remedies. Timeliness fails to divest this

court of requisite jurisdiction.  It follows that as to the
substantive merits of the issue, merger must occur as violative
of the Fifth Amendment's prohibition on double jeopardy and the
controlling law of this state and the United States Supreme
Court.  Accordingly, this court must rule on it.

**b.  Merger of Count Four Into Count Two Should Have Been Had
Since The Court Failed To Instruct To Not Rely On The Evidence
Presented To Prove Count Two As Proof Of Count Four.**

As recounted within the Statement of Facts, the court's
charge is absent of an explicit charge not to utilize elements
relied on to prove count four when deliberating as to
petitioner's guilt of count two.  More alarming is that there
are several precise instructions instructing the jury to rely on
the same elements over again.  Most important is that this
implicates the Fifth Amendment's prohibitory clause barring
multiple punishments for the same crime.  Blockburger v. United
States, 248 U.S. 299 (1932); Whalen v. United States, 445 U.S.
684 (1980); Rutledge v. United States, 517 U.S. 292 (1996);
State v. Best, 70 N.J. 56 (1976); State v. Dillihay, 127 N.J. 42
(1992).

In Blockburger at 304, the court held multiple punishments
could not be imposed for two crimes unless one required proof of
a fact the other did not.  Accordingly, a conviction for rape
was required to merge into a conviction for felony murder,
commission of a homicide during a rape.  Whalen, at 693-694.

Similarly, it was held defendant's conviction for distribution of a controlled dangerous substance must merge into his conviction for operation of a continuing criminal enterprise, and thus the two consecutive life sentences must run concurrent.  Rutledge, at 295-300.

Within this jurisdiction, legislation rendered this prohibition in statutory codification enacted prior to the crimes involved here.  N.J.S. 2C:1-8a.  However, the state's highest court was constrained to employ the same reasoning the land's highest tribunal had.  The conclusion was cumulative punishments for robbery while armed and carrying the weapon used failed to avoid the Blockburger test of requirement of proof of an element the other offense does not, to sustain multiple punishment.  This was prior to enactment of the pertinent statute.  The logic there was defendant had to carry the weapon to the scene of the robbery he was armed during, and this was not statutorily, but constitutionally, required.  Best, at 69.

Premised on this, distribution of drugs and distribution of drugs in proximity to a school was also held to be unable to avoid Blockburger unconstitutionality.  Dillihay, at 47.  The court went on to opine Blockburger representative of the current state of the law in State v. Brown, 138 N.J. 481, 560-561 (1994).

This court must bear in mind Blockburger, Whalen, Best and Dillihay were all decided prior to petitioner's trial, and of the highest import, the statutory bar of this action took effect in excess of a decade prior to the crimes involved here were alleged to have occurred. So too, Brown and Rutledge were decided prior to conclusion of defendant's direct appeal when the State Supreme Court denied a petition for certification. State v. Stovall, 149 N.J., infra. Further noteworthy is the ruling reached in Best was based on constitutional necessity since it predated the current Code of Criminal Justice.

As to the particulars of this matter, several occurrences in Whalen, Best and Dillihay remain highly pertinent. So too, the rulings in Harris v. Oklahoma, 433 U.S. 682 (1977); Simpson v. United States, 435 U.S. 6 (1979); Illinois v. Vitale, 447 U.S. 410 (1980); Grady v. Corbin, 109 L.Ed.2d 548 (1990). This bars: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. Vitale, at 415. The third is at issue here based on a failure not to utilize the same conduct over to convict of the two offenses in question.

The New Jersey appellate court was aware of this and resorted to a similar reasoning extracted from North Carolina v. Pearce, 395 U.S. 711, 717 (1969) in a substantive address on

petitioner's appeal of a motion to correct an illegal sentence.
[Attachment 4.2, 4.10].

The question before the court in <u>Vitale</u> was if the traffic
violation of failing to reduce speed was the same offense as
manslaughter, as opposed to here where questioning multiple
punishment for the same conduct, is involved.

There the court ruled because a failure to reduce speed was
*not necessary* to prove manslaughter multiple punishments were
not barred.  <u>Id</u>., at 418-419.  (Emphasis Added).  Precisely
because a manslaughter conviction could be premised on all sorts
of conduct enumerated within the Illinois manslaughter statute
not limited to a failure to reduce the speed of a motor vehicle,
the court found no bar to multiple punishments.  The matter at
hand is easily distinguished from <u>Vitale</u>.  If anything, it is
totally opposite.  Here, the greater offense of the higher
degree of conviction could not be had absent weapons possession
or an attempt at it.  It constitutes the sole method presented
to accomplish the conduct required for conviction of the greater
crime.  Although a threat would suffice, neither did the state
present, nor the judge charge the jury under that theory.

Yet further, the trial judge's charge failing to instruct
not to rely on the same conduct is had because the conviction
could not occur absent the other offense.  Petitioner submits
that even absent it, multiple punishments were barred pursuant

to _Vitale_.  The only thing accomplished by the charge was the
rendering of it in the manner it was given being necessitated.
In sum, there was no method possible to have a conviction of the
greater offense since the lesser one constituted a necessary
element of it and the court was required to provide it in this
fashion.

The sole method for multiple consecutive sentences to be
imposed on these two counts in question would be if the court
instructed it could find defendant possessed the weapons for
another purpose other than escape as enumerated in the
indictment with evidence of such put before the jury.  Since
neither of these occurred, (or exists pursuant to the jury
finding as it disbelieved petitioner's testimony and that of his
witnesses), the imposition of two consecutive sentences on these
counts is unconstitutional.

Within this jurisdiction, the State Supreme Court reached
the same conclusion in _Best_.  There, the court was asked to
determine if possession of a dangerous weapon merged with
robbery while armed with the same dangerous weapon.  _Id_., at 58.
The court importantly noted there was no evidence presented
defendant carried the weapon for any other purpose other than to
transport it to the scene of the robbery.  _Ibid_. at 67.  Of
course, there, as here, the trial court out of necessity, could
_not_ have instructed the jury _not_ to rely on the same evidence to

46

convict defendant of both the armed robbery and dangerous
weapons counts.  (Emphasis Added).  As there, the same dangerous
weapon was required to be transported to the robbery to render
it one which was accomplished "while armed" elevating the
punishment.  While here, the weapons involved were required to
be either possessed or at the least, attempted to be possessed,
to elevate the crime of attempted escape to a second-degree
crime.  The court also noted there that the outcome might have
differed had defendant possessed the same weapon "an appreciable
time after the robbery."  Best, at 71.

Moreover, here there was no allegation in the indictment,
just as in Best, that petitioner attempted or possessed the
weapons in question, for any other purpose.  Therefore, the
necessity of conforming to the contents of the indictment
required the court to charge as it did, and not indicate it
should not rely on the same facts.  For if not, this would
unconstitutionally broaden the conduct which petitioner was
liable for.  These reasons compel merger of the counts.

Within Best, the court drew a most important distinction
beyond mere merger of counts.  As to merger, requirement as to a
much higher standard for a defendant to prevail while arguing
merger of counts exists as courts often defer to legislative
discretion in intent by authorizing separate punishments in
different statutes, the same fails to hold true for merger of

*sentences*.   (Emphasis Added).   Thus, petitioner maintains that because of the specifics involved, even absent his proof of a legislative intent to impose separate convictions and sentences for counts, those separate convictions and sentences, if legal, must merge in the form of concurrent sentences as to counts four and six.   This is because entry of separate convictions would constitute double punishment for the same conduct.   Best, at 70.

That logic is premised on a Blockburger interpretation had by our state's highest court in State v. Davis, 68 N.J. 69 (1975).   There, the court noted the legislature could not, despite its intent, merely attach different labels to the same type of conduct and impose multiple punishments as this would exceed legislative authority and violate double jeopardy prohibitions.   *Id.*, at 80.

Petitioner submits that this is present in the instant matter.   It results in the judiciary being requested to find a legislative intent to punish twice for acts because they are merely enumerated in different statutes.   This is what occurred in Albrecht v. United States, 273 U.S. 1 (1927), relied on below.   There, defendant received multiple punishments for possession of illegal alcohol and sale of it.   The reasoning there was defendant could have sold the alcohol absent ever possessing it, and that there was legislative intent to impose separate punishments for the conduct.   *Id.*, 11-12.   Viewed in a

48

vacuum this may appear to provide support for application to defendant's matter.  However, some notable distinctions differentiate the matters.

Primarily, Blockburger was decided initially while Whalen, Davis and Best had yet to be decided.  It pre-dated N.J. Const. (1947), art. I, para.11 that constitutes the state prohibition of double jeopardy as the equivalent of the Fifth Amendment prohibition, by two decades.  Dillihay, at 44. With these implementations, it became apparent that there could conceivably be instances where legislative intent to punish separate steps of a crime could be constitutional.  Nonetheless, the mere labeling of the conduct as different crimes alluded to in Davis could not suffice to stave off a double jeopardy challenge.  Of the utmost import is that this certainly does not validate consecutive sentences pursuant to Davis, Best and Whalen under double jeopardy analysis.

In Whalen, the court was careful to note that petitioner's *consecutive* sentence for rape must be vacated because for purposes of punishment the offense merged with felony murder. (Emphasis Added).  Even though they rightfully fail as the mere labeling of the same conduct as constituting different offenses barred in State v. Davis, *infra*, as to double punishments, if the legislature intended them, none of this was looked at.  It

49

constitutes a violation of the double jeopardy clause of the Fifth Amendment and is barred by the decisional law noted.

The logic is plain the court held a prosecution for robbery while armed was barred by the double jeopardy clause. This was because defendant had already been tried for felony murder with robbery while armed as the underlying felony, and a consecutive sentence for the robbery could not be imposed since the robbery elements were all required to be proven to sustain the felony murder conviction. _Harris_. The court also reached a differing conclusion than the result in _Vitale_ in _Grady_, _infra_, when it ruled a later prosecution for homicide and assault would, out of necessity, prove conduct previously prosecuted as a traffic offense. Most succinctly put legislative intent cannot override the Fifth Amendment double jeopardy prohibition. Thus, petitioner must prevail out of constitutional necessity.

That logic would permit the legislature to say double jeopardy be damned we intend multiple punishments merely on whim. Again, this offends _Davis_ by employing the "mere labeling" of the same conduct as elements of differing offenses, which is what occurred here with consecutive sentences for escape implements and second-degree escape. This is because escape becomes a crime of the second degree only when possession or attempted possession of escape implements enumerated as firearms and explosive devices is proven as an element.

In _Best_ where there was no evidence defendant possessed the weapon an appreciable time after the armed robbery, _Id._, at 71. Here, there was a far more horrendous double jeopardy violation. Viewed in the light most favorable to the state, petitioner's brother took possession of disabled firearms and ammunition from an undercover agent after he provided him money while defendant was in a prison several miles away. He was arrested shortly thereafter and nothing indicated he had another purpose, or more importantly, that petitioner's constructive possession of the material came with an intent beyond his escape from prison. Thus, even had his brother intended to sell the material for profit or to assault, kill or rob, petitioner was not responsible for these actions. These facts were not alleged in the indictment, no such evidence was presented, and the court provided no such charge.

Petitioner here is clearly more aggrieved than the defendant in _Davis_ was. Hypothetically, official misconduct could be proven by various different acts, some of which may of themselves not constitute criminal acts. N.J.S. 2C:30-2a prohibits commission of an act knowing that it is unauthorized or commits it in an unauthorized manner. N.J.S. 2C:30-2b prohibits refraining from performing a duty imposed or one clearly inherent. Being intoxicated, ignoring alarms and failing to carry out superior's orders could certainly lead to

51

proof of official misconduct.   These do not constitute criminal

acts.   Here, the elevation of escape required proof of the

escape implements.   The same facts as proof of elements of two

offenses bars it.   However, most importantly is that it was

impossible to elevate the escape to second degree absent the

implements relied on by the state since the theory of a threat

was not pursued or even existent.   It follows consecutive

sentences for precisely the same conduct is barred.   It

undoubtedly constitutes the mere labeling of the conduct as two

offenses barring consecutive sentences.

**c.   It Was Illegal For The Court To Sentence On The Second
Degree Charges When The Jury Disregarded The Court's Instruction
To Not Find Petitioner Guilty Of Both Second and Third Degree
Offenses Of the Same Crime.**

### (1)   Ambiguity in Verdicts

Implicit in the court's charge previously recounted was

that conviction of both second and third degree escape should

not occur.   It will be demonstrated when such does occur,

defendant is entitled to be afforded the benefit of a doubt

under the principles of ambiguity in verdicts and lenity.

An error in grading is not remediable as here when the jury

convicted defendant of both a second degree and third degree

grade of an offense contrary to the trial judge's instruction

not to do so.   [13T 43-18 to 25].   More important is that

because of the disregard of instructions the verdict sheets were rendered useless for resolution of either merger or ambiguity.

So too, the verdict sheet here was constructed so that it asks for a singular verdict on two separate crimes having disparate elements.

Further reflection of the confusion on this count is the jury question submitted during deliberations consisting of could a thought constitute an attempt, and a request "as to the criteria in determining each individual count" at 3:15 p.m. [13T 74-23 to 24, 13T 75-25 to 76-10].  The court instructed the jurors to clarify exactly what they wanted.  They failed to, and returned the verdict convicting petitioner of all counts, some 28 minutes later inclusive of the time consumed for the colloquy with the court.  [13T 77-1 to 82-7].

Ambiguous verdicts have been the subject of address by the courts.  Tateo v. United States, 377 U.S. 463 (1964); Rewis v. United States, 401 U.S. 808 (1971); United States v. Tucker, 404 U.S. 473 (1972); Blakely v. United States, 159 L.Ed.2d 403 (2005); Yates v. United States, 191 L.Ed.2d 64, 82 (2015).

Due process requires a defendant not be sentenced because of misinformation of a constitutional magnitude.  Tucker, at 47-49.  So too, defendant cannot be prosecuted for an aggravated offense.  This is barred by the double jeopardy clause unless each offense has at least one element the other does not, as

established in <u>Rewis</u> and <u>Blakely</u>.  This remains a principle of current law.  <u>Yates</u>, at 82.

Petitioner further urges two other decisions are germane to disposition of this issue.  <u>Naples v. United States</u>, 344 <u>F.2d</u> 508 (D.C. Cir. 1964); <u>United States ex. rel. Flowers v. Illinois Department of Corrections</u>, 767 <u>F.Supp</u>. 880 (N.D. Il. 1994).  The court held that when a jury is instructed as to the elements of first-degree intentional and second-degree non-intentional murder the instruction not to convict of both is necessary.  Should conviction of both occur, the verdict is illegal, and must be set aside.  <u>Naples</u>, at 516-517.

In another matter on point involving a state homicide conviction and embodying the same logic, the jury convicted defendant of both murder and voluntary manslaughter.  On federal habeas, the court held the sentencing court could only sentence on the lesser offense.  See <u>Flowers</u>.  In compliance with this, the trial court could only have entered a conviction for third-degree escape.  More importantly, in conformance with Supreme Court law of <u>Naples</u> the court should have set aside the escape conviction in total and sentenced only on the second-degree escape implements and third-degree escape conviction.

Here, there was no explicit instruction not to re-use the same element, and no attempt at molding the verdict with jury assent.  Merger was required.  The proceedings and finding were

unconstitutional based on the Fifth Amendment and prevailing precedent.

### (2)   The Rule of Lenity

The principle of lenity is probably best displayed in Tucker, where it was established a defendant could not be sentenced based on ambiguous misinformation of a constitutional magnitude.  Id., at 447-449.  It follows lack of knowledge of a knowable standard of conduct violates a fundamental principle of lenity.  Collins v. Kentucky, 234 U.S. 634, 638 (1913).

Resolution by use of lenity construed in favor of criminal defendants was had in Lockhart v. United States, 194 L.Ed.2d 48 (2016); and Voisine v. United States, 195 L.Ed.2d 736 (2016). The court held it was proper for invocation of lenity to occur at the end of the process of resolution, construing in favor of defendant consisting of what was expressed which failed to reveal a satisfactory construction.  Lockhart, at 59.  The doctrine is similarly applicable when a court is confronted with two equally plausible meanings, and/or when what is at hand is susceptible of two interpretations with neither favored. Voisine.

Here, the court was confronted with a verdict convicting petitioner of second and third degree escape.  Nothing indicated anything favoring the conviction should be for the higher degree.  Contrary to lenity principles, the court afforded the

prosecution the benefit of any doubt and resolved this in their favor by entering a conviction for the higher degree of the offense in contradiction to the abundance of constitutional law this is illegal. As such, this finding cannot stand consistent with affording petitioner the constitutional entitlements, he must be provided.

It is urged this is particularly so when the attendant circumstances are considered. Petitioner's testimony implicated the fact the acts that occurred could have been for a different purpose, albeit an unlawful one. Since neither the indictment, nor the verdict specified a particular unlawful purpose of what the weaponry involved was to be used for, the conclusion of the purpose being escape is unproven, even in the verdict rendered. This remains so until now especially in view of the jury's question of whether thought could constitute an attempt.

Yet still, even according to the state's informant, Ducret, petitioner had several purported alternative escape plans. But one consisted of blowing a hole in the wall of the prison hospital. Nothing from Ducret, the informant, or anything else was indicative these alternative plans were to be violent ones. Inferring a jury desire to convict of the higher grade with the ambiguous verdict is preposterous. Permitting it to stand in view of the rule of lenity is more so. Given petitioner was afforded no leniency in interpretation of the verdict it is

tantamount to affording lenity to the prosecution, a benefit to which they are never entitled.

Affording a benefit to inure to the state is repugnant to the rule of lenity.  The verdict cannot stand consistent with substantive and procedural due process being provided.  Nor can it be condoned with providing of a trial, which was fundamentally fair.

It is submitted the unanswered jury question made the logical conclusion the mere thought of escape was a finding petitioner contemplated escape, but they saw insufficient connection to the weapons to conclude they were to be used in it.  Hence, the conviction for third degree escape.

Because of this, the trial court should have disregarded the second-degree escape conviction under principles of lenity compelled by constitutional due process.  At most, petitioner would have been subjected to conviction of two sentences; one third degree for attempted escape, and one second-degree for escape implements possession.  He could have received one extended term for one conviction, twenty years, and five years consecutive for the other, resultant in a total sentence of twenty-five years.

Of particular note here is that petitioner has completed the parole ineligibility term of ten years.  The sole question presented relative to sentencing is whether petitioner's maximum

aggregated New Jersey sentences total either 105, 100 or 95 years.  Specific to here is whether the convictions contested result in sentences of either 20, 25 or 30 years.

Alternative to that he could have been convicted of second-degree escape with the weapons, (implements), count merged since the sole use was for the escape.  This would have resulted in at most an extended term of twenty years with ten of parole ineligibility.  Instead, the trial judge opted for the worst alternative for petitioner: a finding of second-degree escape, (requiring use of weapons), and a separate finding of possession of the same weapons *for another purpose*, evidenced by a failure to merge the counts. (Emphasis Added).  This requires the reasoning, petitioner intended to use some of the weapons and explosives during the escape, and save others for resale for profit.  No testimony from either the state or defense supported this.  It is very absurd.  Yet, this constitutes the logic for the failure to merge the counts and subject petitioner to the longest sentence concocted.  The unconstitutionality is readily apparent and cannot stand.

## CONCLUSION

For all of the aforementioned reasons the court should grant the writ for the reasoning contained in Grounds One and/or Two. Alternatively, for the reasons provided within Ground Three the court should rule petitioner is in custody in violation of his double jeopardy and due process rights and conditionally grant the writ taking effect absent a remedial resentencing.

Respectfully Submitted,

DATED: _February 9, 2020_          _William Stovall_

William Stovall
Petitioner, *Pro Se*

**Prepared by the Court**

RECEIVED AND FILED

SEP 19 2012

DEPUTY CLERK OF SUPERIOR COURT

| | |
|---|---|
| STATE OF NEW JERSEY, | **SUPERIOR COURT OF NEW JERSEY** |
| | **MERCER COUNTY** |
| Respondent | **LAW DIVISION – CRIMINAL PART** |
| | **INDICTMENT NO. 91-12-1439** |
| v. | |
| | **CRIMINAL ACTION** |
| WILLIAM STOVALL, | |
| | **ORDER DENYING THE PETITIONER'S** |
| Petitioner. | **APPLICATION FOR POST-CONVICTION** |
| | **RELIEF** |

**THIS MATTER** having come before the Court on the application for post-conviction relief of the petitioner, William Stovall; Shanti Narra, Esq., appearing on behalf of the petitioner; Mercer County Assistant Prosecutor, Kathleen Petrucci, appearing on behalf of the State of New Jersey; and the Court having considered the submissions of counsel for the parties; and the Court having heard argument on September 14, 2012; and for other good cause shown;

**IT IS ON THIS** ___19th___ day of September 2012,

**ORDERED** that Petitioner's application for post-conviction relief is **DENIED**.

The Court's findings of fact and conclusions of law are set forth in the attached opinion.

_____

HONORABLE THOMAS M. BROWN, J.S.C.

ATTACHMENT 1.1

**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE COMMITTEE ON OPINIONS**

| | | |
|---|---|---|
| STATE OF NEW JERSEY, | : | **SUPERIOR COURT OF NEW JERSEY** |
| | : | **MERCER COUNTY** |
| Plaintiff | : | **LAW DIVISION – CRIMINAL PART** |
| | : | **INDICTMENT NO. 91-12-1439** |
| v. | : | |
| | : | |
| WILLIAM STOVALL, | : | |
| | : | |
| Petitioner. | : | |
| | : | |

Kathleen Petrucci, Mercer County Assistant Prosecutor, for the State.

Shanti Narra, Assigned Counsel for the petitioner, William Stovall.

CLERK OF SUPERIOR COURT
SUPERIOR COURT OF NJ
MERCER COUNTY
RECEIVED AND FILED

SEP 1 9 2012

*Sue Regani*
SUE REGAN
CLERK ..... SUPERIOR COURT

HONORABLE THOMAS M. BROWN, J.S.C.

ATTACHMENT 1.2

## I. STATEMENT OF FACTS & PROCEDURAL HISTORY

On February 13, 1991, Investigator Albert Melendez of the New Jersey Department of Corrections, Internal Affairs Unit, received a letter from a New Jersey State Prison inmate named Daniel Ducret. (8T 21: 10 to 22). Ducret provided information to Investigator Melendez that an inmate named Kareem, later identified to be the defendant, had approached him about planning an escape from prison. (8T 30: 2 to 13). Through Investigator Melendez's investigation, Internal Affairs learned that the defendant was planning to use weapons and explosives to affect the escape. (8T 51: 12 to 22; 8T 96: 8 to 16).

On December 16, 1991, the Mercer County grand jury returned indictment number 91-12-1439, charging the defendant with the following: Count I, Conspiracy in the second degree in violation of N.J.S.A. 2C: 5-2; Counts II and III, Criminal Attempt to Commit Escape in the second degree in violation of N.J.S.A. 2C: 29- 5a, N.J.S.A. 2C: 5-1 and N.J.S.A. 2C: 2-6; Counts IV and V, Criminal Attempt to Procure Implements of Escape in the second degree in violation of N.J.S.A. 2C: 29-6, N.J.S.A. 2C: 5-1 and N.J.S.A. 2C: 2-6; Counts VI and VII, Criminal Attempt to Possess Weapons for Unlawful Purpose in the second degree in violation of N.J.S.A. 2C: 39-4a, N.J.S.A. 2C: 5-1 and N.J.S.A. 2C: 2-6 and 2C:39-4c, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:2-6 respectively; Count VIII and IX, Criminal Attempt to Commit unlawful Possession of a Weapon in the third degree in violation of N.J.S.A. 2C: 39-5b, N.J.S.A. 2C:39-5f, N.J.S.A. 2C; 5-1 and N.J.S.A. 2C: 2-6; and Counts X and XI, Criminal Attempt to Possess a Prohibited Devise, in violation of N.J.S.A. 2C: 39-3a, N.J.S.A. 2C:39-3c, N.J.S.A. 2C: 5-1, and N.J.S.A. 2C: 2-6; and Count XII, Possession of a Prohibited Device, in violation of N.J.S.A. 2C: 39-3f, N.J.S.A. 2C: 5-1 and N.J.S.A. 2C: 2-6.

ATTACHMENT 1.3

A trial was held before the Honorable David J. Schroth, J.S.C. from April 4 to April 29, 1994. The defendant was found guilty of Counts II, IV, VI and VII – XII. On June 17, 1994, the defendant was sentenced to an aggregate term of thirty years imprisonment with a ten year period of parole ineligibility to be served consecutively to a previously imposed sentence of seventy-five years with a thirty-six year parole disqualifier. The defendant filed an appeal on October 20, 1994. On December 2, 1996, the Appellate Division affirmed the defendant's conviction and remanded the case for resentencing on Count IV, Attempt to Procure Escape Implements in the second degree and Count VI, Attempt to Possess Weapons for an Unlawful Purpose in the second degree. The defendant filed petition for Certification with the New Jersey Supreme Court which was denied on March 17, 1997. On July 22, 1997, an amended judgment of conviction was entered sentencing the defendant to a term of twenty years with a ten year period of parole ineligibility. That judgment of conviction was corrected on May 6, 1998 to reflect a thirty year sentence with a ten year period of parole ineligibility.

The defendant filed a notice for post-conviction relief on November 19, 1997. On March 5, 1998, the Office of the Public Defender filed a Notice of Motion for post-conviction relief, relying on the original pro-se petition filed by the defendant. On April 28, 1998, the defendant's then counsel filed a motion to withdraw the Petition for post-conviction relief and a new attorney was assigned to represent the defendant. On March 25, 2011, the defendant's new counsel filed an amended verified petition and supplemental brief on behalf of the defendant. On June 2, 2011, the Mercer County Prosecutor's office filed a brief in response to petitioner's post-conviction relief application. On September 14, 2012, counsel for the defendant and the State argued the matter.

ATTACHMENT 1.4

## II. LEGAL ANALYSIS

In this application, the defendant argues that he was denied effective assistance of counsel by both trial and appellate counsel. The State responds that the defendant has failed to establish grounds for relief by a preponderance of the evidence and that the defendant is procedurally barred pursuant to <u>R.</u> 3: 22-4.

### A. *Timing of the Application*

Pursuant to <u>R.</u> 3: 22-12, a first petition for post- conviction relief must be filed no more than 5 years after the date of the entry of the judgment of conviction. Pressler & Verniero, <u>Current N.J. Court Rules</u>, <u>R.</u> 3:22-12, (2012). The defendant's application for post-conviction relief was filed originally filed on November 19, 1997, three years and five months after the entry of the judgment of conviction. Although it appears there have been extensive delays in the court's opportunity to review the application in connection with the change in the defendant's assigned counsel, the Court finds that the defendant's application is nevertheless timely pursuant to the current rules of the court as relaxed per correspondence to the defendant dated April 11, 2005 from Hon. Bill Mathesius, J.S.C..

### B. *Grounds for Post-Conviction Relief*

In accordance with <u>R.</u> 3: 22-2, a defendant may file an application for post-conviction relief based on: a) substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey; b) lack of jurisdiction of the court; c) imposition of an illegal sentence; (d) any habeas corpus, common-law or statutory remedy for collateral attack.

"A petitioner must establish the right to [post-conviction] ... relief by a preponderance of the evidence. Post–conviction relief is neither a substitute for direct appeal... nor an opportunity to

3

ATTACHMENT 1.5

relitigate cases already decided on the merits." State v. Preciose, 129 N.J. 451, 459 (1991), citations omitted. Thus, if the petitioner failed to raise a claim in a prior proceeding, he may be procedurally barred from post-conviction relief, unless the petitioner can show: a) that that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or b) that enforcement of the bar would result in fundamental injustice; or c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey. Id. Further, a defendant will only be entitled to an evidentiary hearing on his post-conviction relief application, upon the establishment of a prima facie case of post-conviction relief, the court's finding that there are disputed issues of material fact that cannot be resolved by the existed record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief. Pressler & Verniero, Current N.J. Court Rules, R. 3:22-10 (b), (2012). The defendant must establish the right to post-conviction relief by a preponderance of the credible evidence. State v. Williams, 284 N.J. Super. 142, 149 (Law Div. 1995), citing State v. Mitchell, 126 N.J. 565 (1992).

The defendant argues that trial counsel and appellate counsel failed to provide effective assistance of counsel. For an ineffective assistance of counsel claim, the defendant must establish the following pursuant to the test set forth in Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068 (1984), adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42 (1987): 1) that his counsel's performance was deficient and 2) that but for his counsel's deficiency, the result of the proceeding would have been different. The defendant must establish both prongs of the Strickland test for a successful claim. Ibid. For a prima facie claim of ineffective assistance of counsel, the defendant must establish a reasonably likelihood of succeeding under the Strickland test, viewing the facts in the light most favorable to the

ATTACHMENT 1.6

defendant. Pressler & Verniero, Current N.J. Court Rules, R. 3:22-10 (b), (2012); State v. Presciose, supra, 129 N.J. 451 at 463.

Deficient performance, in accordance with the first prong of Strickland, requires the defendant to prove that counsel's errors were so serious that the attorney was not actually performing the function of counsel as defined by the Sixth Amendment of the United States Constitution. Id. at 687. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. The defendant must specifically identify counsel's actions or omissions that did not constitute reasonably professional judgment. Id. at 690. The court will review the reasonableness of counsel's challenged conduct in connection with the facts of the particular case. Id. Based on this review, the court must find that the challenged conduct was so egregious as to undermine the court's confidence in the defendant's conviction. Id. at 694.

In this case, the defendant argues that he should be granted post-conviction relief based on ineffective assistance of counsel because of the following conduct: 1) trial counsel's failure to object or move for a mistrial based on the introduction of an unstipulated polygraph reference; 2) trial counsel's failure to object or move for mistrial based on a witness's reference to an outside source; and 3) cumulative errors made by both trial and appellate counsel.

Trial counsel's and appellate counsel's alleged deficiencies will be addressed separately first, then addressed cumulatively.

### 1. Ineffective Assistance of Trial Counsel

#### a. Introduction of Polygraph Reference

The defendant asserts that trial counsel erred in allowing testimony regarding an unstipulated polygraph reference. Specifically, the defendant asserts that testimony given by Daniel Ducret on

5

ATTACHMENT 1.7

cross-examination, in connection with Investigator Melendez's testimony, introduced unstipulated polygraph evidence for the jury's consideration.

In New Jersey, polygraph results are generally not admissible. <u>New Jersey. State v. Domicz</u>, 188 <u>N.J.</u> 285, 312-13, 907 A.2d 395 (2006); <u>State v. McDavitt</u>, 62 <u>N.J.</u> 36, 44, 297 A.2d 849 (1972); <u>State v. Driver</u>, 38 <u>N.J.</u> 255, 261, 183 A.2d 655 (1962). Further, direct or indirect references to polygraph results are inadmissible and will necessitate a reversal if admitted. *See* <u>State v. Arnwine</u>, 67 <u>N.J. Super.</u> 483, 495 (App. Div. 1961), <u>State v. Parsons</u>, 83 <u>N.J. Super.</u> 430 (App. Div. 1964).

Specifically, defendant questions the following testimony of Investigator Melendez on re-direct examination:

Q:      Now Officer, is there any reason why when you first received this information from Mr. Ducret that you didn't just go over once you found out it was William Stovall he was talking about and say Mr. Stovall, we found out about your plan to escape and you can't do it.

A:      Excuse me? Is there any reason why we wouldn't have done that?

Q:      Yeah.

A:      Yes.

Q:      There is. Can you tell us what that reason might be?

A:      Due to the way the Department of Corrections operate, there need to be some type of substantiation to the allegations. We wouldn't just make - - to accuse somebody to be planning an escape.

Q:      So, based on the information that you received from him on the 13th, that would not be sufficient to have charged Mr. Stovall with anything?

A:      No.

Q:      Sir, would it have been appropriate for you to have ignored the information you received from Mr. Ducret?

A:      No.

Q:      Why not?

A.:     Because of the seriousness of the escape plan, and the fact that it was coming from inmate Ducret and it involved inmate William Stovall.

Q:      Sir, if you had - - well, before turning the information over to Special Investigation Unit, without - - I'm not asking you to disclose your procedure and what you did, but did you attempt to - - take steps I think you mentioned to verify the information that you had received/

A:      Yes.

ATTACHMENT 1.8

Q:      And based on the steps you took, you did go and contact the Special Investigation
        Unit?
A.:     Yes.
(8T 77: 2 to 15: 22 to 25), (8T 78: 1 to 16).

The defendant further questions the following testimony of Daniel Ducret on

cross examination:


Q:      After you had your meeting in February, you were given a phone number to
        contact Lopes: Correct?
A:      Excuse me?
Q:      After you had your meeting in February, February 13, 1991, you were given the
        phone number of Lopez, correct?
A:      I don't know how long after that , but yes, sometime after the meeting I was given
        the phone number.
Q:      How many meetings did you have with people in Internal Affairs?
A:      From Internal Affairs, I had - - I believe I had two.
Q:      When were those meetings? We know one was February 13th, when was the other
        one?
A:      February 16, I believe.
Q:      Do you remember who was at that second meeting?
A:      It was just a female officer from Internal Affairs, I believe.
Q:      Just the female officer or was there anyone else?
A:      No just the female officer.
Q:      What did you discuss with the female officer?
A:      I didn't discuss much. It was a polygraph test.
Q:      And didn't you receive the telephone number before that meeting?
A:      I don't think so, no.
(8T 150: 15 to 25; 151: 1 to 11)

The defendant contends that when the Investigator Melendez's testimony was taken together

with Daniel Ducret's testimony, the jury reasonably inferred that Mr. Ducret passed a polygraph

test. The defendant further argues that this testimony prejudiced the defendant by bolstering

Ducret's credibility. The defendant contends that his trial counsel should have objected to the

introduction of polygraph evidence since it is inadmissible.

The reference to polygraph information was brought out by questioning from the defendant's

trial counsel on cross examination of Daniel Ducret. After there was mention of a polygraph test,

ATTACHMENT 1.9

defense counsel diverted the questioning onto another subject and did not press about the results of the test. The State also did not ask any questions on redirect about the results of the polygraph test. The reference to the test was minimal.  Further, the results of the polygraph test were not explored by the defendant's trial counsel.  It was for the jury to decide the credibility of the witnesses.  Given the length of the trial, the number of witnesses and the weight of the evidence against the defendant weighted against the one time reference to a polygraph test, it is unreasonable that a jury hearing that a polygraph test was given would jump to the conclusion that the test was passed and therefore the State's main witness was more credible than before.

Even if the jury did find Daniel Ducret to be more credible as a result of this testimony, the outcome of this case likely would have been the same given the length of the trial and the scope of evidence against the defendant. The majority of the evidence against the defendant came from the defendant's contact with undercover State Police Detective, Amalio Nieves.

In addition, this is an issue that should have been properly raised on direct appeal and is thus, not applicable in a post-conviction relief application.  It does not appear that this issue was raised in the defendant's appeal of December 2, 1996. In accordance with R. 3:22-4, any ground for relief not raised in a prior proceeding under this rule, or in the proceeding resulting in the conviction ... or in any appeal taken in such proceedings is barred from assertion in a proceeding under this rule unless it falls under one of the three delineated exceptions, mentioned above. No exception is applicable to this issue. Defendant has not made any showing that an enforcement of the bar of this issue would result in fundamental injustice or that denial of relief would be contrary to the U.S. or New Jersey Constitution. Therefore, the defendant has not shown that post-conviction relief should be granted on the basis of the introduction of unstipulated polygraph reference.

ATTACHMENT 1.10

### b. *Reference to an Outside Source*

Defendant also argues that Investigator Melendez's testimony that referred to an "outside source" conveyed information from a non-testifying declarant to incriminate the defendant in violation of the Confrontation Clause.

Specifically, the defendant believes the following testimony was improper:

Q: Okay, and based upon the information that he provided you with, what did you do?

A: At the completion of the interview, we took steps to verify the information he had given us.

Q: Now, would it be fair to say that you took some other steps in furthering your investigation?

A: Yes.

Q: And as a result of taking those additional steps in the investigation, did there ever come a time when you decided to provide this information to another law enforcement agency?

A: Yes

Q: You didn't get the impression in your mind that, hey, maybe this guy Ducret is calling the shots and not the guy Kareem?

A: Once my office corroborated the information, we did not or I did not have that impression.

The State argues that trial counsel's failure to object was a strategic move and further did not cause counsel to fall below reasonably competent representation of the defendant. Again, similar to the defendant's argument regarding the polygraph reference, trial counsel's failure to object to references to an outside source likely would not have changed the outcome of the case and was a reasonable decision as part of trial counsel's strategy. The Investigator did not testify to any statements made by the alleged "outside source" that the jury considered. Rather his testimony only indicates that he continued with the investigation once his office corroborated or verified the information. In ongoing investigations, information can be corroborated through a variety of investigatory tools. Corroboration is not synonymous with testimony from an "outside

9

ATTACHMENT I.11

source." Therefore, this Court finds that trial counsel was not ineffective for failure to object to Investigator Melendez's testimony regarding an "outside source."

Additionally, this issue also should have been raised on direct appeal and is therefore barred pursuant to R. 3:22-4.

### 2. Ineffective Assistance of Appellate Counsel

The Strickland test is also used to evaluate ineffective assistance of counsel claims for appellate counsel. State v. Morrison, 215 N.J. Super. 540, 546 (App. Div.1989) , certif. denied., 107 N.J. 642 (1987), *See* Smith v. Murray, 477 U.S. 527, 535 (1986); State v. Harris, 181 N.J. 391, 518 (2004). To establish an ineffective assistance of appellate counsel claim for, the defendant must show that his attorney's representation fell below an objective standard and the defendant was prejudiced as a result. State v. Morrison, supra. "While an attorney should zealously advance the cause of his client ... It is improper for an attorney to present an issue unless it can be done in good faith. Simply because an indigent defendant has the right to be represented by counsel ... does not oblige his counsel to urge specious arguments so as to satisfy that right. No party has the right to have advanced on his behalf contentions that are palpably and clearly unmeritorious. State v. Kyles, 132 N.J. Super. 397, 400-401 (1975). Taken another way, appellate counsel, like trial counsel, has the ability to determine a strategy of which issues should be raised and which issues are not worth raising on appeal.

In the brief excerpt of the appeal that the defendant attached to his initial filing, it appears that appellate counsel raised the following arguments: 1) defendant was denied his constitutional right to a fair trial because he was shackled during the trial, 2) the trial court erred by denying defendant's motion to dismiss for lack of a speedy trial, 3) the trial court erred by denying the defendant the right to cross-examine Ducret on his prior escape plan, 4) defendant was denied

ATTACHMENT 1.12

effective assistance of counsel, 5) the trial court erred by denying the motion for judgment notwithstanding the verdict on grounds for due process entrapment, 6) the cumulative error doctrine required a reversal of defendant's conviction and 7) the sentence imposed was excessive and illegal.

Appellate counsel also argued in her brief that the court abused its discretion in allowing the defendant's witnesses to be in prison garb and shackles. After considering these arguments, the appellate division affirmed the defendant's conviction and remanded case for resentencing on Count IV, Attempt to Procure Escape Implements in the second degree and Count VI, Attempt to Possess Weapons for an Unlawful Purpose in the second degree.

The defendant only claims that appellate counsel was ineffective for failure to raise the issue of the admission of unstipulated polygraph testimony at trial. This alone does not show that appellate counsel's actions were so egregious that defendant was prejudiced. The Appellate Division considered the numerous arguments raised by appellate counsel. It was appellate counsel's professional strategy not to raise the issue of polygraph testimony. As mentioned, appellate counsel is not obligated to raise every issue on appeal, only issues which can be raised clearly and in good faith. State v. Kyles, 132 N.J. Super. 397, 400-401 (1975).

### 3. *Cumulative Errors of Counsel*

Prior adjudication on an issue, particularly on direct appeal, will ordinarily bar post-conviction relief. Pressler & Verniero, Current N.J. Court Rules, comment on R. 3:22-5 (2012), See State v. Harris, 181 N.J. 391, 494 (2004); State v. Marshall, 148 N.J. 89, 147-152, cert. denied 522 U.S. 850 (1997); State v. McQuaid, 147 N.J. 464, 484 (1997); State v. White, 260 N.J. Super. 531 (App. Div. 1992), certif. den. 133 N.J. 436 (1993). R. 3: 22-5, provides: " A prior adjudication upon the merits of any ground for relief is conclusive whether made in the

ATTACHMENT 1.13

proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings."

The issues raised in the present post-conviction relief application, including ineffective assistance of trial counsel, have all been raised by appellate counsel on appeal. Defendant does not get another bite at the apple to now re-argue those issues that were considered. Therefore, with the exception of the claim of ineffective assistance of appellate counsel all issues raised in this post-conviction relief application are barred pursuant to R. 3: 22-5. Defendant failed to make a prima facie case to show that he was denied ineffective assistance of appellate counsel.

As stated appellate counsel argued a multitude of issues on behalf of the defendant and used her discretion to determine which issues she would not be able to present to the Appellate Division in good faith.

### Conclusion

Defendant is procedurally barred from raising the issue of ineffective assistance of trial counsel as, although this is generally argued on an application for Post Conviction Relief, this issue was raised on appeal. Further, this Court finds that the Defendant has failed to make a prima facie showing that either trial counsel or appellate counsel's failure to raise the issue of the unstipulated polygraph reference and reference to an outside source, constituted ineffective assistance of counsel. Defendant has not satisfied this Court by a preponderance of the evidence his right to post-conviction relief. Based on the foregoing, the defendant's application for post-conviction relief is denied.

ATTACHMENT 1.14

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1162-13T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILLIAM STOVALL,

    Defendant-Appellant.

Submitted January 26, 2016 — Decided February 17, 2016.

Before Judges Hoffman and Whipple.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Indictment No.
91-12-1439.

Joseph E. Krakora, Public Defender, attorney
for appellant (Winnie Ihemaquba, Designated
counsel, on the brief).

Angelo J. Onofri, Acting Mercer County
Prosecutor, attorney for respondent (Brett
A. Berman, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Defendant William Stovall, an inmate at New Jersey State

Prison, was charged and convicted of several offenses for

attempting to procure weapons and explosives to facilitate an

escape from prison. He now appeals from a September 19, 2012



Attachment 2.1



trial court order denying his petition for post-conviction relief (PCR). For the reasons that follow, we affirm.

I.

We fully set forth the factual background of this case in our prior opinion affirming defendant's conviction on direct appeal, <u>State v. Stovall</u>, No. A-0850-94 (App. Div. Dec. 2, 1996), <u>certif. denied</u>, 149 <u>N.J.</u> 35 (1997), and need not repeat it here.

This matter commenced in 1991, when a Mercer County grand jury charged defendant with ten offenses: second-degree conspiracy to escape from prison, <u>N.J.S.A.</u> 2C:5-2 and 29-5(a); second-degree attempt to escape from prison, <u>N.J.S.A.</u> 2C:5-1 and 29-5(a); second-degree attempt to procure implements of escape from prison, <u>N.J.S.A.</u> 2C:5-1 and 29-6(a)(2); second-degree attempt to possess firearms for an unlawful purpose, <u>N.J.S.A.</u> 2C:5-1 and 39-4(a); second-degree attempt to possess destructive devices for an unlawful purpose, <u>N.J.S.A.</u> 2C:5-1, 39-4(c); third-degree attempt to possess handguns for an unlawful purpose, <u>N.J.S.A.</u> 2C:5-1 and 39-5(b); third-degree attempt to possess an assault firearm for an unlawful purpose, <u>N.J.S.A.</u> 2C:5-1 and 39-5(f); third-degree attempt to possess destructive devices for an unlawful purpose, <u>N.J.S.A.</u> 2C:5-1 and 39-3(a); fourth-degree attempt to possess a firearm silencer for an

ATTACHMENT 2.2

A-1162-13T4



unlawful purpose, N.J.S.A. 2C:5-1 and 39-3(c); and fourth-degree attempt to possess armor-penetrating ammunition for an unlawful purpose, N.J.S.A. 2C:5-1 and 39-3(f)(2).

A jury convicted defendant of all ten offenses. The court sentenced defendant to thirty years imprisonment with twenty years of parole ineligibility, to run consecutively to a previously imposed sentence of seventy-five years with a thirty-six-year parole disqualifier. On direct appeal, we affirmed the conviction, but remanded the matter for re-sentencing.[1] Stovall, supra, slip op. at 20.

According to the State's brief, on November 17, 1997, defendant filed a pro se petition for PCR; counsel for defendant filed but then withdrew a brief, but the petition was not withdrawn. At some point thereafter, defendant was appointed counsel, who filed a supplemental brief in 2011, asserting ineffective assistance of counsel. On September 19, 2012, the PCR judge denied the petition without an evidentiary hearing. Defendant now submits the following arguments on appeal:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S
> PETITION FOR POST-CONVICTION RELIEF SINCE
> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO
> REQUEST CURATIVE INSTRUCTIONS OR MOVE FOR A

---

[1] On remand, the trial court eventually sentenced defendant to a thirty-year prison term with ten years of parole ineligibility.

ATTACHMENT 2.3



3

A-1162-13T4

MISTRIAL   WHEN   UNSTIPULATED   POLYGRAPH
EVIDENCE WAS INTRODUCED AT TRIAL.

## POINT II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S
PETITION FOR POST-CONVICTION RELIEF SINCE
TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO
OBJECT TO DEFENDANT'S WITNESSES TESTIFYING
IN   PRISON   GARB   WHILE   HANDCUFFED   AND
SHACKLED.

## POINT III

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S
PETITION FOR [POST-CONVICTION] RELIEF SINCE
APPELLATE   COUNSEL   WAS   INEFFECTIVE   FOR
FAILURE   TO   CHALLENGE   THE   ADMISSION   OF
UNSTIPULATED POLYGRAPH TESTIMONY AT TRIAL.

## POINT IV

DEFENDANT REASSERTS ALL OTHER ISSUES RAISED
IN DEFENDANT'S PRO SE POST-CONVICTION RELIEF
PETITION.

## POINT V

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S
REQUEST FOR AN EVIDENTIARY HEARING.

II.

To establish a prima facie case of ineffective assistance

of counsel, a petitioner must show: (1) counsel's performance

was objectively deficient; and (2) counsel's deficient

performance prejudiced the petitioner to the extent that he was

deprived of his right to a fair trial. State v. Fritz, 105 N.J.

42, 58 (1987) (adopting the United State's Supreme Court's two-

prong test from Strickland v. Washington, 466 U.S. 668, 687, 104



ATTACHMENT 2.4

A-1162-13T4

S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984)). Prejudice means "a reasonable probability" the deficient performance "materially contributed" to the petitioner's conviction.   Ibid.

A petitioner for PCR is generally entitled to an evidentiary hearing upon showing a prima facie claim of ineffective assistance.   State v. Porter, 216 N.J. 343, 354 (2013). To establish a prima facie claim, the petitioner "must allege specific facts and evidence supporting his allegations." Id. at 355.  The trial court has discretion to dispense with an evidentiary hearing "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . or that the defendant's allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing[.]"  State v. Marshall, 148 N.J. 89, 158 (citations omitted), cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997).

Defendant first argues that his trial counsel provided ineffective assistance during trial by failing to object to certain testimony from Daniel Ducret, one of the State's principal witnesses.  Ducret was a jailhouse informant who had tipped off the authorities about defendant's plan to escape from prison, and assisted with the undercover investigation that led to defendant's arrest.  During his cross-examination, Ducret



A-1162-13T4

mentioned that he underwent a polygraph test prior to working with law enforcement during the investigation.[2]   Rather than moving to strike this reference to the polygraph, defendant's trial counsel changed the subject and moved on with the cross-examination.

In New Jersey, polygraph results are generally not admissible at trial.  State v. Domicz, 188 N.J. 285, 312—14 (2006).  Further, direct or indirect references to the results of a polygraph test are inadmissible, and have the potential to prejudice a defendant.   State v. Arnwine, 67 N.J. Super. 483, 495 (App. Div. 1961).

Although noting that the references to Ducret's polygraph test were inadmissible, the PCR judge concluded that defendant was not prejudiced by his counsel's failure to request a curative instruction or move for a mistrial:

> The reference to polygraph information was brought out by questioning from the defendant's trial counsel on cross examination of Daniel Ducret.  After there was mention of a polygraph test, defense counsel diverted the questioning onto another subject and did not press about the results of the test.  The State also did not ask any questions on redirect about the results of the polygraph test.  The reference to the test was minimal.  Further,

---

[2] The polygraph was also indirectly referenced by one of the detectives involved in the investigation, who testified that he had taken steps to corroborate Ducret's information.



> the results of the polygraph test were not
> explored by [defendant's] trial counsel. It
> was for the jury to decide the credibility
> of the witnesses. Given the length of the
> trial, the number of witnesses and the
> weight of the evidence against the defendant
> weighted against the one time reference to a
> polygraph test, it is unreasonable that a
> jury hearing that a polygraph test was given
> would jump to the conclusion that the test
> was passed and therefore the State's main
> witness was more credible than before.

We discern no error in the PCR judge's conclusion. As for the first prong of the <u>Strickland</u> test, trial counsel's decision not to raise an objection to the polygraph reference was not a constitutionally-deficient trial strategy. The reference to the polygraph was plainly inadmissible; however, rather than bringing more attention to the polygraph, defense counsel chose to change the subject and move on with his cross-examination. Defense counsel did not explore the issue further, and the results of the polygraph were never introduced at trial. As Ducret only made a passing reference to the polygraph, the effect was likely minimal. Although trial counsel might have requested the court to address the passing reference to the polygraph, merely having a legal basis to object to evidence does not necessarily impose a constitutional duty to do so.

Furthermore, the PCR judge correctly concluded that defendant was not prejudiced by the reference to the polygraph test. Even assuming that the jury gave more weight to Ducret's



ATTACHMENT 2.7

A-1162-13T4

testimony based on an inference that he had passed a polygraph test, defendant's conviction was supported by compelling evidence provided by another witness. Specifically, Detective Amalio Nieves — who worked undercover as Ducret's supposed gun and explosives dealer and dealt directly with defendant — testified extensively to defendant's efforts to procure weapons and explosives for the purpose of escaping from prison. This testimony was clearly sufficient, standing alone, to support the jury's verdict. Defendant's argument that "the State's case hinged on Ducret's credibility" is unfounded, in light of the overwhelming evidence against him provided by Detective Nieves.[3]

Defendant next asserts that his trial counsel provided ineffective assistance by failing to object when two of his supporting witnesses, who were inmates, were required to testify in shackles and prison garb. Defendant contends that his trial counsel's failure to object to the requirement — or, alternatively, to request a Rule 104 hearing on the issue — was prejudicial because the shackles and prison garb "had the

---

[3] For substantially the same reasons, defendant challenges the sufficiency of his appellate counsel's representation. He asserts that "but for appellate counsel's failure to challenge the trial court's abuse of discretion, the outcome of this case would have been different, a new trial where the unstipulated polygraph test is excluded." For the reasons already noted, we discern no merit in defendant's claim of ineffective assistance of appellate counsel.



ATTACHMENT 28

A-1162-13T4

potential of undermining the testimony that [the witnesses] offered on [defendant's] behalf."

We agree with the PCR judge that defendant was not prejudiced by his trial counsel's failure to object to this requirement. During trial, it was obvious that the witnesses were New Jersey State Prison inmates. Both men testified that they were inmates who had direct contact with Ducret; in fact, their current incarceration was the focal point of their testimony. Defendant's argument that the jury might have reached a different result if these two witnesses had testified in plain clothes and without shackles clearly lacks merit. The testimony of both witnesses focused on the fact that Ducret had also approached them about potentially facilitating a weapons deal. Even assuming that their testimony had been given full weight, defendant has not shown any reasonable probability that the jury's decision would have been different.[4] The PCR judge correctly concluded that defendant failed to establish a prima facie case of ineffective assistance of counsel.

[4] The Supreme Court has since ruled that "a trial court may not require a defendant's witness to appear at trial in prison garb[,]" State v. Artwell, 177 N.J. 526, 539 (2003); however, in State v. Dock, 205 N.J. 237 (2011), the Court stated, "Artwell's limited prohibition on the use of restraints on defense witnesses . . . is to have prospective effect." Id. at 258-59. Thus, as defendant's trial took place in 1994, the trial court did not violate the rule in Artwell by requiring defendant's witnesses to testify in prison garb.



ATTACHMENT 29

Da854

A-1162-13T4

We also reject defendant's argument that the PCR court erred by failing to conduct an evidentiary hearing on his petition. A hearing is required

> only upon the establishment of a prima facie case in support of post-conviction relief, a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief. To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.

> [R. 3:22-10(b).]

Because defendant failed to present a prima facie case of ineffective assistance of counsel, an evidentiary hearing was not required on defendant's petition. We are convinced that the existing record was sufficient to resolve defendant's claims. Moreover, even assuming that defendant's counsel committed errors, we discern no reasonable probability that any such errors materially contributed to his convictions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION



ATTACHMENT 2.10

A-1162-13T4

Prepared by the Court

|  |  |
|---|---|
| STATE OF NEW JERSEY, | : SUPERIOR COURT OF NEW JERSEY<br>: MERCER COUNTY<br>: LAW DIVISION – CRIMINAL PART |
| Plaintiff, | : INDICTMENT NO: 91-12-1439 |
| vs. | : |
|  | : |
| WILLIAM STOVALL, | :         CRIMINAL ACTION |
|  | : |
| Defendant. | :           ORDER |

THIS MATTER, having been brought before the court upon the motion of pro se defendant. William Stovall. seeking to correct his alleged illegal sentence: and the court having considered his submissions and for good cause shown:

IT IS on this ___ day of August 2017, hereby ORDERED that the Defendant's Motion to correct his illegal sentence is hereby MOOT for the reasons stated in the letter addressed to defendant.

FILED

AUG 2 1 2017

SUPERIOR COURT
MERCER VICINAGE
CRIMINAL DIV.

_____
THE HON. THOMAS M. BROWN. J.S.C.

Da 59

Attachment 3.1

# SUPERIOR COURT OF NEW JERSEY
## MERCER VICINAGE

Thomas M. Brown
Judge of the Superior Court
P: (609) 571 - 4860
F: (609) 571 - 4874



Mercer County Courthouse
P.O. Box 8068
Trenton, NJ 08650-0068

August 29, 2017

William Stovall, SBI # 210197A
East Jersey State Prison
1100 Woodbridge Road
Rahway, New Jersey 07065



RE: *Pro se* motion to correct illegal sentence (Ind. No. 91-12-1439)

Dear Mr. Stovall,

This Court has reviewed your *pro se* motion regarding your alleged illegal sentence. This motion is moot, as you have already exhausted your appeal remedies and your post-conviction relief remedies. Nevertheless, for your accommodation, please find each of your arguments addressed individually below.

**Doctrine of Merger does not apply to the Count II and Count IV convictions, and, thus, may be consecutively sentenced.**

Escape is defined as a defendant removing himself, without lawful authority, from official detention. N.J.S.A. 2C:29-5. A related charge, but not a lesser included offense, is obtaining implements for escape, which is defined as "knowingly and unlawfully" possessing "any implement of escape." N.J.S.A. 2C:29-6. Both of these charges may be accompanied by an inchoate offense, such as an "attempt" offense. N.J.S.A. 2C:5-1. The United States Supreme Court has held that in cases where two offense arise out of the same act or transaction, the offenses do not merge so long as each requires elements that the other does not. See Blockburger v. United States, 248 U.S. 299, 304 (1932). Thus, an acquittal of conviction under one statute does not preclude punishment under another statute from the same act or transaction, provided the all the elements of the second offense are still met. Albrecht v. United State 273 U.S. 1, 11-12 (1927).

You argued that your Constitutional rights were violated because the merger doctrine was not applied to Count II and Count IV. In *Blockburger* the Court considered similar merger concerns. Blockburger, *supra*, at 299. There, the Court was considering multiple drug deals, in which the defendant was claiming the offenses



. ATTACHMENT 3.2

# SUPERIOR COURT OF NEW JERSEY
## MERCER VICINAGE

Thomas M. Brown
Judge of the Superior Court
P: (609) 571 - 4860
F: (609) 571 - 4874



Mercer County Courthouse
P.O. Box 8068
Trenton, NJ 08650-0068

should be merged into one substantiated offense, rather than multiple counts. Id. at 203. However, because the days were different, the amounts of the drugs were different and the sales were different, the Court ruled that the statute had been violated multiple times, and should not be merged together with previous transactions. Id. at 304.

The same reasoning applies in your case. The two offenses committed under separate statutes require separate factual elements be satisfied. An attempt to escape and an attempt to possess a weapon in an escape are clearly separate offenses and require different facts. It does not matter whether or not similar evidence was used to convict the defendant of the separate counts. With a conviction under separate counts, running consecutively, the thirty (30) year incarceration period with ten (10) years of parole ineligibility remains the correct and appropriate sentence.

**The Rule of Lenity is inapplicable as the jury sheet was completed permissibly.**

You further allege your sentence was ambiguous in your motion and supplemental motion that the Rule of Lenity should apply to his favor. You have not provided a statutory explanation as to why your sentence is ambiguous, but have rather offered a conclusory determination. Although a clerical correction was made to your Judgment of Conviction (JOC), you have correctly been sentenced to thirty (30) years with ten (10) years of parole ineligibility.

Moreover, your allegation that the jury was improperly instructed before your conviction with respect to the second and third degree attempt to escape charge also fails. The second-degree charge you were sentenced to has not been challenged or changed throughout your long procedural history. The jury merely checked the "guilty" box to show that each juror believed the proofs had been satisfied a third degree conviction if each juror felt the prosecution had established a second-degree conviction beyond a reasonable doubt. Thus, there was no foul play with respect to the jury sheets.

**Actual possession of the weapons in prison does not preclude a finding and conviction of criminal attempt.**



ATTACHMENT 3.3

# SUPERIOR COURT OF NEW JERSEY
## MERCER VICINAGE



Thomas M. Brown
Judge of the Superior Court
P: (609) 571 - 4860
F: (609) 571 - 4874

Mercer County Courthouse
P.O. Box 8068
Trenton, NJ 08650-0068

Your conviction of attempting to procure weapons is a mixture of the substantive offense under N.J.S.A. 2C:29-6(a)(2) and the inchoate offense of "attempt" under N.J.S.A. 2C:5-1. You were convicted of an attempt to procure the weapons; therefore, physically possessing them is not a material element of the crime you were convicted of.

**Defendant's sentence was not increased but rather a clerical error was corrected.**

The fact that your initial JOC reflected that your sentence was twenty (20) years rather than thirty (30) years incarceration was a clerical error, and does not raise a double jeopardy implication. Under double jeopardy, a defendant is charged multiple times for the same offense, however, you have not been charged multiple times. Rather, your JOC was amended to correctly reflect the jury's verdict and the trial court's sentencing determination. The Court may correct a clerical error at its own discretion. R. 1:13-1.

Additionally, the court proceeding which took place to correct the clerical error does not constitute a re-sentencing. Therefore, your rights were not impeded when you were absent for such correction.

Thank you,

Thomas M. Brown, J.S.C.



ATTACHENT 3.4

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0610-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

WILLIAM STOVALL,

      Defendant-Appellant.

---

Submitted March 26, 2019 – Decided September 4, 2019

Before Judges Hoffman and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 91-12-1439.

William Stovall, appellant pro se.

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Lauren Martinez, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

      Defendant William Stovall appeals from the August 29, 2017 order that denied his motion to correct an illegal sentence. In denying the motion, the trial

Attachment 4.1

court stated the motion was moot because defendant "already exhausted [his] appeal remedies and [his] post-conviction relief remedies." The trial court then addressed each of defendant's arguments. We affirm the order on substantive grounds.

I

Defendant was indicted in 1991 for attempting to procure weapons and explosives in order to escape from prison. He was convicted by a jury in 1994 of all counts against him in the indictment. Relevant here, defendant was convicted under count two of second-degree attempt to escape, N.J.S.A. 2C:5-1 and 2C:29-5(a), and under count four of second-degree attempt to procure escape implements (firearms, ammunition, and explosives), N.J.S.A. 2C:5-1 and 2C:29-6(a)(2).[1] We have set forth in detail the factual background of the case

---

[1] His other convictions included: second-degree conspiracy to escape, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:29-5(a) (count one); second-degree attempt to possess weapons (firearms) for unlawful purposes, N.J.S.A. 2C:5-1 and 2C:39-4(a) (count six); second-degree attempt to possess weapons (destructive devices) for unlawful purposes, N.J.S.A. 2C:5-1 and 2C:39-4(c) (count seven); third-degree attempt to unlawfully possess weapons (handguns), N.J.S.A. 2C:5-1 and 2C:39-5(b) (count eight); third-degree attempt to unlawfully possess a weapon (assault firearm), N.J.S.A. 2C:5-1 and 2C:39-5(f) (count nine); third-degree attempt to possess prohibited devices (explosives), N.J.S.A. 2C:5-1 and 2C:39-3(a) (count ten); fourth-degree attempt to possess a prohibited device (silencer), N.J.S.A. 2C:5-1 and 2C:39-3(c) (count eleven); and fourth-degree possession of

2

A-0610-17T4

Attachment 4.2

in our unreported opinion that affirmed defendant's convictions on direct appeal, and do not have need to repeat it here. See State v. Stovall (Stovall I), No. A-0850-94 (App. Div. Dec. 2, 1996).[2]

In 1994, defendant was sentenced. Count one was merged into count two. He was sentenced to an extended term of twenty years of imprisonment on count two with a ten-year period of parole ineligibility. This was to be served consecutively to the sentence he was already serving.[3] Defendant was sentenced to a ten-year term of imprisonment on count four with a ten-year period of parole ineligibility. This was to be served consecutive to count two.[4] Thus, defendant's aggregate term was thirty years in prison with a twenty-year period of parole ineligibility.

---

prohibited devices (body-armor breaching or penetrating ammunition), N.J.S.A. 2C:39-3(f)(2) (count twelve).

[2] Defendant's petition for certification was denied. State v. Stovall, 149 N.J. 35 (1998). In 2016, we affirmed an order that denied defendant's petition for post-conviction relief in an unreported opinion, State v. Stovall (Stovall II), No. A-1162-13 (App. Div. Feb. 17, 2016). The Supreme Court denied his petition for certification. State v. Stovall, 227 N.J. 213 (2016).

[3] He was serving a seventy-five year term with a thirty-six year period of parole ineligibility.

[4] His sentences on the other counts ranged from eighteen months on counts eleven and twelve to a ten-year term on count seven, all of which were to be served concurrent to one another and concurrent to counts two and four.

3

A-0610-17T4

Attachment 4.3

The 1994 judgment of conviction incorrectly listed defendant's aggregate term as twenty years. In <u>Stovall I</u>, we addressed defendant's arguments that his sentence was excessive and illegal. We concluded the trial court was correct to merge count one (conspiracy) into count two. <u>Stovall I</u>, slip op. at 17. However, we vacated the sentence on count four because defendant was sentenced to ten years under N.J.S.A. 2C:43-6(g), which concededly did not apply to a violation of N.J.S.A. 2C:29-6(a)(2).[5] <u>Ibid.</u> The sentence was vacated and remanded for resentencing. <u>Id.</u> at 20.

In 1997, defendant was resentenced to a twenty-year term on count two with ten years of parole ineligibility to be served consecutively to the sentence he then was serving. On count four, he was sentenced to a ten-year term to run consecutively to count two.[6] However, the judgment of conviction provided the aggregate custodial term was twenty years rather than thirty years. In 1998, an assistant prosecutor wrote to the trial judge advising the judgment of conviction should have said the total custodial sentence was thirty years, rather than twenty,

---

[5] We also remanded the sentence on count six for reconsideration in light of <u>State v. Latimore</u>, 197 N.J. Super. 197, 221 (App. Div. 1984).

[6] He was resentenced on count six to a ten-year term with a five-year period of parole ineligibility.

A-0610-17T4

Attachment 4.4

with a fifteen-year period of parole ineligibility.   Thereafter, the judgment of conviction was amended to correctly reflect a total custodial term of thirty years.

In 2016, defendant filed a motion to correct an illegal sentence and supported it with multiple briefs.  The motion was denied on August 29, 2017. The trial court rejected defendant's argument that count four should have been merged into count two because it reasoned each of the convictions "require[d] elements that the other [did] not."  The court noted, "an acquittal of conviction under one statute [did] not preclude punishment under another statute from the same act or transaction, provided that all the elements of the second offense [were] still met."  The court observed, "an attempt to escape and an attempt to possess a weapon in an escape are clearly separate offenses and require different facts."  It rejected defendant's argument that the same evidence could not be used to convict under separate counts.  Because defendant was convicted under separate counts, the court found the thirty-year aggregate sentence was "the correct and appropriate sentence."  The correction of the judgment to reflect an aggregate term was a clerical correction.  This was not an increase in his sentence.  The trial court disagreed with defendant that the jury's verdict sheet was ambiguous because the "second-degree charge [he was] sentenced to has not been challenged or changed throughout [his] long procedural history."  The

5

A-0610-17T4

Attachment 4.5

trial court held that because defendant was convicted of an attempt to procure weapons, the physical possession of them was not a material element of that crime.

On appeal, defendant raises the following issues:

POINT I

DEFENDANT'S MOTION WAS TIMELY.

POINT II

MERGER OF COUNT FOUR INTO COUNT TWO MUST BE HAD SINCE THE COURT FAILED TO INSTRUCT TO NOT RELY ON THE EVIDENCE PRESENTED TO PROVE COUNT TWO AS PROOF OF COUNT FOUR.

POINT III

IT WAS ILLEGAL FOR THE COURT TO SENTENCE ON THE SECOND DEGREE CHARGES WHEN THE JURY DISREGARDED THE COURT'S INSTRUCTION TO NOT FIND DEFENDANT GUILTY OF BOTH SECOND AND THIRD DEGREE OFFENSES OF THE SAME CRIME.

a. Ambiguity In Verdicts

b. The Rule of Lenity

POINT IV

THE SECOND DEGREE SENTENCE IMPOSED ON COUNT FOUR IS ILLEGAL PURSUANT TO THE FOURTEENTH AMENDMENT BECAUSE

A-0610-17T4

Attachment 4. 6

DEFENDANT NEVER POSSESSED THE IMPLEMENTS OF ESCAPE INSIDE THE PRISON.

POINT V

AN INCREASE IN SENTENCE AFTER ENTRY OF AN AMENDED JUDGMENT OF CONVICTION IS UNCONSTITUTIONAL PURSUANT TO THE DOUBLE JEOPARDY PROVISIONS OF THE FEDERAL AND STATE CONVICTIONS [SIC], AND MINIMAL DUE PROCESS.

    a. Procedural Due Process, Double Jeopardy Concerns Generally

    b. Substantive Due Process Implications

POINT VI

DEFENDANT WAS CONSTITUTIONALLY ENTITLED TO BE PRESENT FOR ANY RESENTENCING OR PROVIDE INPUT. THUS, HE REMAINS ENTITLED TO A RESENTENCING.

    a. State Provisions

    b. Applicable Federal Law

## II

Whether a sentence is illegal is an issue of law that we review de novo. See State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2015). "An illegal sentence that has not been completely served may be corrected at any time without impinging upon double-jeopardy principles." State v. Austin, 335 N.J.

7

A-0610-17T4



Attachment 4.7

Super. 486, 494 (App. Div. 2000). "Our Supreme Court has defined 'an illegal sentence [as] one that "exceeds the maximum penalty provided in the Code for a particular offense" or a sentence "not imposed in accordance with law."'" State v. Hyland, 452 N.J. Super. 372, 381 (App. Div. 2017) (quoting State v. Acevedo, 205 N.J. 40, 45 (2011)), aff'd as modified, 238 N.J. 135 (2019). "A sentence 'not imposed in accordance with law' includes a 'disposition [not] authorized by the Code.'" Ibid. (quoting State v. Murray, 162 N.J. 240, 247 (2000)). Under Rule 3:21-10(b), "an order may be entered at any time . . . correcting a sentence not authorized by law including the Code of Criminal Justice."

Defendant has not argued that his sentences exceeded the maximum custodial terms as extended or that law did not authorize them. His arguments are that the sentences are violative of the double jeopardy or due process clauses.

We agree with the State that defendant could have raised any of these issues in his prior appeals or in his PCR petition. Generally, we "will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012) (citing Deerfield Estates, Inc. v. E. Brunswick, 60 N.J. 115, 120 (1972)). Defendant has not raised any issues that warrant further review of his sentence.

A-0610-17T4

Attachment 4.8

Defendant contends the trial court should have merged count four into count two for sentencing, but the convictions were for separate offenses, requiring proof of separate elements. Defendant was convicted under count two of second-degree attempt to escape, contrary to N.J.S.A. 2C:5-1 and 2C:29-5(a). As the trial court instructed, a conviction required:

> proof beyond a reasonable doubt that the defendant was confined in an institution on a charge or a conviction, that the defendant attempted to engage in conduct[,] which would result in his own removal from custody, that the defendant had no legal right to do so, and that the defendant acted knowingly.

Although ordinarily a crime of the third degree, it is elevated to second degree where "there is proof beyond a reasonable doubt that the actor attempted to employ force, threat, a deadly weapon or other dangerous instrumentality to effect the escape."

Defendant was convicted under count four of second-degree attempt to procure escape implements (firearms, ammunition, and explosives) contrary to N.J.S.A. 2C:5-1 and 2C:29-6(a)(2). Under this count, the State had to prove beyond a reasonable doubt that defendant "was an inmate of an institution, that the [d]efendant attempted to procure the weapons mentioned . . . that [the] weapons might be useful for an escape, and that the [d]efendant acted both

9

Attachment 4.9

knowingly and unlawfully."  When the attempt was to obtain "weapons" as defined, then the offense was a second-degree offense rather than a third degree.

Our Supreme Court stated that "[t]he Double Jeopardy Clause contains three protections for defendants.  It protects against (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" State v. Miles, 229 N.J. 83, 92 (2017) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).  The Court noted that what was common to the three protections "is the concept of 'same offense.'"  Ibid.  "Accordingly, a prime concern when reviewing a double-jeopardy claim is 'whether the second prosecution is for the same offense involved in the first.'"  Id. at 92-93 (quoting State v. Yoskowitz, 116 N.J. 679, 689 (1989)).  In Miles, the Court adopted the "same-elements test as the sole double-jeopardy analysis" and instructed that it would not "recognize the same-evidence test as a measure of whether two offenses constitute the same offense."  Id. at 96.

The Double Jeopardy Clause was not violated here.  The elements of the offenses under counts two and four are plainly distinct; they do not involve the same elements.  One is an attempt by defendant to remove himself from detention; the other is an attempt to procure weapons while in custody.

10

A-0610-17T4



Attachment 4.10

Applying <u>Miles</u>, there is no Double Jeopardy Clause violation and, of course, no necessity to merge the counts for purposes of sentencing.   Merger was not required by N.J.S.A. 2C:1-8.

Defendant's argument that the same evidence was used to convict him under counts two and four is incorrect in light of the separate elements for these counts, and is out of step with <u>Miles</u> because that analysis focuses on whether the elements of the crimes are the same.  We reject defendant's argument that the attempt to procure weapons—that elevated the crimes to second degree— somehow required merger.  That fact did not take what otherwise were separate crimes (attempt to escape and attempt to procure weapons) and meld them into one.  There is no evidence the legislature intended that result nor does it make any logical sense.

Similarly lacking is defendant's argument that a conviction under count four required the actual possession of a weapon.  That is not an element of the offense, particularly when what is charged is an attempt.  When an attempt is involved, the focus is on the defendant's intent.  <u>State v. Robinson</u>, 136 N.J. 476, 483 (1994).  "[O]ne of the main purposes of the Code's criminal attempt statute, N.J.S.A. 2C:5-1, is to ensure that a person who acts with the purpose of

11

A-0610-17T4


Attachment 4.11

committing a crime does not escape punishment merely because the crime was not completed." Ibid.  Actual possession is not required.

Defendant argues that the trial court increased his sentence when it corrected a clerical error on the judgment of conviction.  He does not seem to dispute that the trial judge sentenced him to a twenty-year term on count two and a ten-year term on count four to run consecutively.  Despite this, the judgments of conviction said that the total term was twenty years.  This error was corrected in 1998.  By simple math, the aggregate term was thirty years.  This is what the judgment of conviction was corrected to say.  There was no increase in his sentence.  The trial court had the ability to correct a clerical-type error "on its own initiative or on the motion of any party . . . ." R. 1:13-1; see State v. Matlack, 49 N.J. 491, 501-502 (1967) (providing that "[n]o fundamental right of defendant will be violated if an inadvertent clerical-type error is corrected, and he receives the sentence which the trial judge intended him to receive").  "It is firmly established that the sentencing transcript is 'the true source of the sentence.'"  State v. Walker, 322 N.J. Super. 535, 556 (App. Div. 1999) (quoting State v. Pohlabel, 40 N.J. Super. 416, 423 (App. Div. 1956)).  There was no requirement in the Rule that defendant be present when the clerical correction was made.

A-0610-17T4

Attachment 4.12

Defendant contends the rule of lenity should apply to the verdict sheet because the jury checked both boxes under counts two and four and that this should be used to lower his convictions to third-degree offenses.

> The rule of lenity is an important principle of statutory construction; if a statutory ambiguity cannot be resolved by analysis of the relevant text and the use of extrinsic aids, the rule requires that the ambiguity be resolved in favor of the defendant. The rule of lenity derives from the principle that "[n]o one shall be punished for a crime unless both that crime and its punishment are clearly set forth in positive law."
>
> [State v. Regis, 208 N.J. 439, 451-52 (2011) (citations omitted) (quoting In re DeMarco, 83 N.J. 25, 36 (1980)).]

Our Supreme Court has made clear that the rule is limited in its application. "[T]he rule of lenity is applied only if a statute is ambiguous, and that ambiguity is not resolved by a review of 'all sources of legislative intent.'" Id. at 452 (quoting State v. D.A., 191 N.J. 158, 165 (2007)).

The rule does not apply because the ambiguity of a statute is not in issue in this case. In addition, defendant did not previously raise this issue although he had the opportunity to do so in his direct appeal. Although we are not required to consider the issue, see Galicia, 210 N.J. at 383, we agree with the trial judge that the checked boxes indicated the jury agreed that the State proved second-degree offenses. There was no ambiguity reflected in the transcript. The

13

A-0610-17T4


Attachment 4.13

jury foreperson announced the jury's verdict on both counts as being in the second degree and the jury thereafter was polled, indicating agreement.

None of defendant's issues raised any due process concerns. We conclude that defendant's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0610-17T4

Attachment 4.14